# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAVID CAMERON, Individually and on Behalf of All Others Similarly Situated, <br><br>                  Plaintiff, <br><br>     v. <br><br> KRISPY KREME, INC., JOSH CHARLESWORTH, and JEREMIAH ASHUKIAN, <br><br>                  Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff David Cameron ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Krispy Kreme, Inc. ("Krispy Kreme" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Krispy Kreme; and (c) review of other publicly available information concerning Krispy Kreme.

## NATURE OF THE ACTION AND OVERVIEW

1.       This is a class action on behalf of persons and entities that purchased or otherwise acquired Krispy Kreme securities between February 25, 2025 and May 7, 2025, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.       Krispy Kreme, together with its subsidiaries, produces doughnuts. On October 26, 2022, the Company commenced a small-scale test to offer doughnuts at McDonald's Corporation ("McDonald's") restaurants in Louisville, Kentucky and the surrounding area. On March 26, 2024, Krispy Kreme and McDonald's announced they would expand their partnership nationwide beginning in the second half of 2024.

3.       On May 8, 2025, before the market opened, Krispy Kreme released its first quarter 2025 financial results, reporting its "net revenue was $375.2 million…a decline of 15.3%" and a "net loss of $33.4 million, compared to prior year net loss of $6.7 million." Additionally, the Company announced that it is "reassessing [its] deployment schedule together

with McDonald's" and "withdrawing [its] prior full year outlook and not updating it" due in part to "uncertainty around the McDonald's deployment schedule."

4.     On this news, the price of Krispy Kreme shares fell 24.71%, or $1.07 per share, to close at $3.26 per share on May 8, 2025, on unusually heavy trading volume.

5.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that demand for Krispy Kreme products declined materially at McDonald's locations after the initial marketing launch; (2) that demand at McDonald's locations was a driver of declining average sales per door per week; (3) that the partnership with McDonald's was not profitable; (4) that the foregoing posed a substantial risk to maintaining the partnership with McDonald's; (5) that, as a result, the Company would pause expansion into new McDonald's locations; and (6) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiff David Cameron, as set forth in the accompanying certification, incorporated by reference herein, purchased Krispy Kreme securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Krispy Kreme is incorporated under the laws of Delaware with its principal executive offices located in Charlotte, North Carolina. Krispy Kreme's common stock trades on the NASDAQ exchange under the symbol "DNUT."

13.     Defendant Josh Charlesworth ("Charlesworth") was the Company's Chief Executive Officer ("CEO") at all relevant times.

14.     Defendant Jeremiah Ashukian ("Ashukian") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15.     Defendants Charlesworth and Ashukian (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the

3

contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Krispy Kreme, together with its subsidiaries, produces doughnuts. On October 26, 2022, the Company commenced a small-scale test to offer doughnuts at McDonald's restaurants in Louisville, Kentucky and the surrounding area. On March 26, 2024, Krispy Kreme and McDonald's announced they would expand their partnership nationwide beginning in the second half of 2024. On October 10, 2024, Krispy Kreme announced that it "expects to serve fresh doughnuts daily in more than 1,000 McDonald's restaurants by the end of this year."

### Materially False and Misleading

### Statements Issued During the Class Period

17.     The Class Period begins on February 25, 2025.[1]  On that day, before the market opened, Krispy Kreme released its fourth quarter 2024 financial results, reporting "net revenue

_____

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

of $404.0 million, a decline of 10.4%." The Company further stated: "In the U.S. segment, net revenue declined $50.9 million, or 17.2%," due to, in part "a decline in retail sales" with "DFD average sales per door per week decreased… driven by changing customer mix." Specifically, on that date, the Company issued a press release announcing the Company's financial results for the quarter and fiscal year ended December 29, 2024, stating as follows in relevant part:

| *Financial Highlights* | Quarters Ended | | | Fiscal Years Ended | | |
|---|---|---|---|---|---|---|
| *$ in millions, except per share data* | December 29, 2024 | December 31, 2023 | Change | December 29, 2024 | December 31, 2023 | Change |
| **GAAP:** | | | | | | |
| Net revenue | $ 404.0 | $ 450.9 | (10.4)% | $ 1,665.4 | $ 1,686.1 | (1.2)% |
| Operating (loss)/income | $ (11.5) | $ (5.3) | nm | $ (8.7) | $ 13.1 | nm |
| Operating (loss)/income margin | (2.8)% | (1.2)% | -160 bps | (0.5)% | 0.8 % | -130 bps |
| Net (loss)/income | $ (22.2) | $ 1.9 | nm | $ 3.8 | $ (36.6) | nm |
| Net (loss)/income attributable to KKI | $ (22.4) | $ 2.6 | nm | $ 3.1 | $ (37.9) | nm |
| Diluted (loss)/income per share | $ (0.13) | $ 0.02 | $ (0.15) | $ 0.02 | $ (0.23) | $ 0.25 |
| | | | | | | |
| **Non-GAAP**[(1)]: | | | | | | |
| Organic revenue | $ 400.6 | $ 393.5 | 1.8 % | $ 1,658.1 | $ 1,578.8 | 5.0 % |
| Adjusted net income, diluted | $ 1.2 | $ 15.1 | nm | $ 19.2 | $ 46.2 | nm |
| Adjusted EBITDA | $ 45.9 | $ 64.1 | (28.4)% | $ 193.5 | $ 211.6 | (8.6)% |
| Adjusted EBITDA margin | 11.4 % | 14.2 % | -280 bps | 11.6 % | 12.6 % | -100 bps |
| Adjusted EPS | $ 0.01 | $ 0.09 | $ (0.08) | $ 0.11 | $ 0.27 | $ (0.16) |

[(1)]  Non-GAAP figures – please refer to "Non-GAAP Measures" and "Reconciliation of Non-GAAP Financial Measures."

| *Key Operating Metrics* | Fiscal Years Ended | | |
|---|---|---|---|
| *$ in millions* | December 29, 2024 | December 31, 2023 | Change |
| Global Points of Access | 17,557 | 14,147 | 24.1 % |
| Sales per Hub (U.S.) trailing four quarters | $ 4.9 | $ 4.9 | — % |
| Sales per Hub (International) trailing four quarters | $ 10.1 | $ 9.9 | 2.0 % |
| Digital Sales as a Percent of Retail Sales | 14.4 % | 19.3 % | -490 bps |

\*          \*          \*

 **Fourth Quarter 2024 Consolidated Results** *(vs Q4 2023)*

Krispy Kreme's fourth quarter results reflect the strength of the omni-channel model, ***delivering net revenue of $404.0 million, a decline of 10.4%, compared to $450.9 million in the same quarter last year*** primarily due to the sale of a majority ownership stake of Insomnia Cookies in the third quarter of 2024 ($101 million impact) and the 2024 Cybersecurity Incident (estimated $11 million impact). Organic revenue grew 1.8%, driven by the Company's first quarter of Delivered Fresh Daily ("DFD") sales in excess of $100 million worldwide. Organic revenue was impacted adversely by an estimated 280 basis points from lost revenue linked to the 2024 Cybersecurity Incident.

GAAP net loss was $22.2 million, compared to income in the prior year of $1.9 million. GAAP Diluted Loss per Share was $(0.13), a decline of $(0.15) from the same quarter last year.

***Global Points of Access grew 24.1%, linked to the Company's accelerating U.S. expansion now reaching more than 1,900 McDonald's restaurants with daily deliveries of Krispy Kreme doughnuts, alongside growth internationally.***

Adjusted EBITDA in the quarter declined 28.4% to $45.9 million, linked to an estimated $10 million dollar impact from the 2024 Cybersecurity Incident, with Adjusted EBITDA margins contracting 280 basis points to 11.4%. Adjusted EBITDA Margin reflects an estimated 210 basis point negative impact from the 2024 Cybersecurity Incident.

Adjusted Net Income, diluted declined to $1.2 million in the quarter from $15.1 million in the same quarter last year. Adjusted EPS declined $0.08 to $0.01 from $0.09 in the same quarter last year, due to increased interest expense and depreciation and amortization and an estimated impact of $0.04 due to the 2024 Cybersecurity Incident.

*       *       *

## Fourth Quarter 2024 Segment Results (vs Q4 2023)

***U.S.: In the U.S. segment, net revenue declined $50.9 million, or 17.2%, largely attributable to*** the sale of Insomnia Cookies ($57.4 million impact), ***a decline in retail sales,*** and the 2024 Cybersecurity Incident; partially offset by growth in the DFD business. Organic revenue declined by 1.2%, with an estimated headwind of 460 basis points attributable to the 2024 Cybersecurity Incident. Sales per Hub in the U.S. remained consistent at $4.9 million and ***DFD average sales per door per week decreased, as expected, and were $631, driven by changing customer mix.***

U.S. Adjusted EBITDA decreased 44.0% to $23.6 million with Adjusted EBITDA margin contraction of 460 basis points to 9.6%, of which an estimated 350 basis points were attributable the 2024 Cybersecurity Incident.

*       *       *

## 2025 Financial Outlook

***Krispy Kreme issues the following guidance for the full year 2025 (vs FY2024)***

- Net Revenue of $1,550 to $1,650 million
- Organic Revenue growth of +5% to +7%
- Adjusted EBITDA of $180 to $200 million
- Adjusted EPS of $0.04 to $0.08
- Income Tax rate between 32% and 36%
- Capital Expenditures of 6% to 7% of net revenue
- Interest Expense, net of $65 million to $75 million

The company expects leverage to trend towards 4.0x by year end 2025.

18.     On February 27, 2025, Krispy Kreme filed with the SEC its annual report on Form 10-K, which stated in relevant part:

> We added net 3,508 new DFD Doors during the fiscal year as we continue to focus on the deployment of our Hub and Spoke model and our expansion into QSR channels. We plan to continue adding new locations and expanding our digital platform in order to extend the availability of and access to our products. ***We are excited about our partnership with McDonald's and the phasing of the U.S. national rollout, which we believe has validated the attractiveness of the QSR channel***.

19.     On April 23, 2025, Krispy Kreme published a press release titled "Krispy Kreme Board Nominates Refreshed Slate of Directors to Support Company's Transformation," which stated in relevant part:

> "Welcoming Bernardo [Hees] to our Board at a pivotal time for Krispy Kreme will be invaluable as we seek to maximize shareholder value through ***our two largest growth opportunities: profitable U.S. expansion*** and capital-light international growth," said Josh Charlesworth, Krispy Kreme CEO.

20.     The above statements identified in ¶¶17-19 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that demand for Krispy Kreme products declined materially at McDonald's locations after the initial marketing launch; (2) that demand at McDonald's locations was a driver of declining average sales per door per week; (3) that the partnership with McDonald's was not profitable; (4) that the foregoing posed a substantial risk to maintaining the partnership with McDonald's; (5) that, as a result, the Company would pause expansion into new McDonald's locations;  and (6) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

21.     Then, on May 8, 2025, before the market opened, Krispy Kreme released its first quarter 2025 financial results, reporting its "net revenue was $375.2 million…a decline of 15.3%" and a "net loss of $33.4 million, compared to prior year net loss of $6.7 million." Additionally, the Company announced that it is "reassessing [its] deployment schedule together with McDonald's" and "withdrawing [its] prior full year outlook and not updating it" due in part to "uncertainty around the McDonald's deployment schedule." Specifically, on that date, the Company issued a press release announcing the Company's financial results for the first quarter ended March 30, 2025. The press release reported the Company's fiscal results, as follows in relevant part:

**First Quarter Highlights (vs Q1 2024)**

- Net revenue of $375.2 million
- Organic revenue declined 1.0% to $374.7 million
- GAAP net loss of $33.4 million
- Adjusted EBITDA of $24.0 million
- GAAP cash used for operating activities of $20.8 million
- Global Points of Access ("POA") increased 3,168, or 21.4%, to 17,982

\*                    \*                    \*

**First Quarter 2025 Consolidated Results (vs Q1 2024)**

Krispy Kreme's first quarter results reflect continued investment ahead of growth in the Company's U.S. nationwide expansion and wider adoption of the capital-light international franchise model. Net revenue was $375.2 million in the first quarter of 2025, a decline of 15.3% or $67.5 million, primarily due to the $64.3 million reduction associated with the divestiture of a majority stake in Insomnia Cookies in the third quarter of fiscal 2024. In line with expectations, organic revenue declined $3.6 million, or approximately 1.0%, as growth in Global Points of Access and Delivered Fresh Daily ("DFD") revenues were more than offset by expected consumer softness leading to a decline in doughnut shop transaction volume.

GAAP Net Loss was $33.4 million, compared to prior year net loss of $6.7 million. GAAP diluted loss per share was $0.20, compared to a loss of $0.05 in the same quarter last year.

Adjusted EBITDA declined to $24.0 million, with Adjusted EBITDA Margin declining to 6.4% as the Company invests ahead of growth and navigates a challenged global consumer backdrop linked to macroeconomic, weather, and inflationary factors. Adjusted Net Loss, diluted was $8.8 million in the quarter. Adjusted Diluted loss per share was $0.05 in the quarter.

*   *   *

**Financial Outlook**

As of March 30, 2025, Krispy Kreme doughnuts are now available in more than 2,400 McDonald's restaurants. ***The Company is reassessing the deployment schedule together with McDonald's while it works to achieve a profitable business model for all parties and does not expect to launch in any additional restaurants in the second quarter of 2025.***

Krispy Kreme continues to believe in the long-term opportunity of profitable growth through the U.S. nationwide expansion including McDonald's.

***Given macroeconomic softness and the uncertainty around the McDonald's deployment schedule, the Company is withdrawing its prior full year outlook and not updating it at this time.***

22. On this news, the price of Krispy Kreme shares fell 24.71%, or $1.07 per share, to close at $3.26 on May 8, 2025, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Krispy Kreme securities between February 25, 2025 and May 7, 2025 inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

24. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Krispy Kreme's shares actively traded on the

NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Krispy Kreme shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Krispy Kreme or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

25. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

26. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

27. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Krispy Kreme; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

28.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

<strong><u>UNDISCLOSED ADVERSE FACTS</u></strong>

29.     The market for Krispy Kreme's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Krispy Kreme's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Krispy Kreme's securities relying upon the integrity of the market price of the Company's securities and market information relating to Krispy Kreme, and have been damaged thereby.

30.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Krispy Kreme's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Krispy Kreme's business, operations, and prospects as alleged herein.

31.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or

misleading statements about Krispy Kreme's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

32.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

33.     During the Class Period, Plaintiff and the Class purchased Krispy Kreme's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

34.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Krispy Kreme, their

control over, and/or receipt and/or modification of Krispy Kreme's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Krispy Kreme, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

35.     The market for Krispy Kreme's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Krispy Kreme's securities traded at artificially inflated prices during the Class Period.  On February 25, 2025, the Company's share price closed at a Class Period high of $7.13 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Krispy Kreme's securities and market information relating to Krispy Kreme, and have been damaged thereby.

36.     During the Class Period, the artificial inflation of Krispy Kreme's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Krispy Kreme's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Krispy Kreme and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the

Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

37.     At all relevant times, the market for Krispy Kreme's securities was an efficient market for the following reasons, among others:

(a)     Krispy Kreme shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Krispy Kreme filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Krispy Kreme regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Krispy Kreme was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

38.     As a result of the foregoing, the market for Krispy Kreme's securities promptly digested current information regarding Krispy Kreme from all publicly available sources and reflected such information in Krispy Kreme's share price. Under these circumstances, all purchasers of Krispy Kreme's securities during the Class Period suffered similar injury through their purchase of Krispy Kreme's securities at artificially inflated prices and a presumption of reliance applies.

39.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## **NO SAFE HARBOR**

40.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Krispy Kreme who knew that the statement was false when made.

15

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

#### Against All Defendants

41.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

42.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Krispy Kreme's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

43.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Krispy Kreme's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

44.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Krispy Kreme's financial well-being and prospects, as specified herein.

45.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Krispy Kreme's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Krispy Kreme and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

46.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

47.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Krispy Kreme's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

48.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Krispy Kreme's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Krispy Kreme's securities during the Class Period at artificially high prices and were damaged thereby.

49.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff

and the other members of the Class and the marketplace known the truth regarding the problems that Krispy Kreme was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Krispy Kreme securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

50.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

51.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

52.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

53.    Individual Defendants acted as controlling persons of Krispy Kreme within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other

statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

55.     As set forth above, Krispy Kreme and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 16, 2025

*/s/ Garth Spencer*

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Garth Spencer (NCSB# 60142)
Charles Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
gspencer@glancylaw.com
clinehan@glancylaw.com

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Telephone: (310) 914-5007

*Counsel for Plaintiff*

# SWORN CERTIFICATION OF PLAINTIFF

## KRISPY KREME, INC. SECURITIES LITIGATION

I, David Cameron, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the Krispy Kreme, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Krispy Kreme, Inc. securities during the Class Period set forth in the Complaint are as follows:

      (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

5/14/2025
_____
Date

_____
David Cameron

**David Cameron's Transactions in Krispy Kreme, Inc. (DNUT)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 2/25/2025 | Bought | 250 | $7.0000 |
| 2/25/2025 | Sold | -250 | $7.0000 |
| 2/26/2025 | Bought | 250 | $6.4000 |
| 2/26/2025 | Bought | 1,000 | $6.0000 |
| 3/6/2025 | Bought | 1,000 | $5.7800 |
| 3/11/2025 | Bought | 500 | $5.5400 |
| 3/11/2025 | Bought | 500 | $5.4600 |
| 3/11/2025 | Bought | 500 | $5.3900 |
| 3/28/2025 | Bought | 2,000 | $5.0500 |
| 4/1/2025 | Bought | 2,000 | $4.9500 |
| 4/4/2025 | Bought | 4,000 | $4.2000 |