UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAVID CAMERON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>KRISPY KREME, INC., JOSH CHARLESWORTH, and JEREMIAH ASHUKIAN,<br><br>Defendants. | Case No. 3:25-cv-00332-MOC-SCR |
| ELIZABETH LEODLER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>KRISPY KREME, INC., JOSH CHARLESWORTH, and JEREMIAH ASHUKIAN,<br><br>Defendants. | Case No. 3:25-cv-00469-MOC-DCK |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF TEJA MUDIKI FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 3

ARGUMENT .......................................................................................................................... 5

    I.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR
         ALL PURPOSES ................................................................................................ 5

    II.    MUDIKI SHOULD BE APPOINTED LEAD PLAINTIFF ................................. 6

        A.     Mudiki Is Willing to Serve as Class Representative and Has
             Timely Filed This Motion to Be Appointed Lead Plaintiff. ....................... 7

        B.     Mudiki Has the "Largest Financial Interest." ............................................ 8

        C.     Mudiki Otherwise Satisfies the Requirements of Rule 23. ......................... 9

        D.     Mudiki Will Fairly and Adequately Represent the Interests of the
             Class and Is Not Subject to Unique Defenses. ......................................... 12

    III.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD
         BE APPROVED ................................................................................................ 12

CONCLUSION ..................................................................................................................... 14

CERTIFICATION REGARDING USE OF ARTIFICIAL INTELLIGENCE (AI) ................... 16

CERTIFICATE OF SERVICE .............................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
    141 F.R.D. 229 (S.D.N.Y. 1992) ......................................................................................10

*Cameron v. Krispy Kreme, Inc. et al.*,
    No. 3:25-cv-00332 .........................................................................................................1, 7

*Chamblee v. Terraform Power, Inc.*,
    No. CV PX 16-981, 2016 WL 4039178 (D. Md. July 28, 2016)............................................10

*Giraudon v. Innovative Indus. Props., Inc.*,
    No. GLR-25-182, 2025 WL 1167847 (D. Md. Apr. 22, 2025) ...................................................9

*Hirtenstein v. Cempra, Inc.*,
    No. 1:16CV1303, 2017 WL 2874588 (M.D.N.C. July 5, 2017) ............................6, 10, 11, 12

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)...............................................................................................8

*In re Comverse Tech., Inc. Sec. Litig.*,
    No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ....................8, 13

*In re Microstrategy Sec. Litig.*,
    110 F. Supp. 2d 427 (E.D. Va. 2000) ..............................................................................6, 12

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) .....................................................................................8

*In re Petrobras Securities Litigation*,
    No. 14-cv-09662 (S.D.N.Y.)..............................................................................................13

*Janbay v. Canadian Solar, Inc.*,
    272 F.R.D. 112 (S.D.N.Y. 2010) ......................................................................................10

*Johnson v. Pozen Inc.*,
    No. 1:07CV599, 2008 WL 474334 (M.D.N.C. Feb. 15, 2008) ........................................10, 11

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
    311 F.R.D. 373 (S.D.N.Y. 2015) ......................................................................................12

*Lax v. First Merchants Acceptance Corp.*,
    No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997).......................................................8

*Leodler v. Krispy Kreme, Inc. et al.*,
No. 3:25-cv-00469 ................................................................................................ *passim*

*Tchatchou v. India Globalization Cap., Inc.*,
No. 8:18-CV-03396-PWG, 2019 WL 1004591 (D. Md. Feb. 28, 2019)...................................8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008)..................................................................................12

**Statutes**

15 U.S.C. § 78u-4 ................................................................................ *passim*

Private Securities Litigation Reform Act of 1995 ................................................ *passim*

Securities Exchange Act of 1934......................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23................................................................................ *passim*

Fed. R. Civ. P. 42......................................................................................1, 2, 6

Teja Mudiki ("Mudiki") respectfully submits this memorandum of law in support of his motion, pursuant to Federal Rule of Civil Procedure 42 ("Rule 42") and Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Mudiki as Lead Plaintiff on behalf of a class (the "Class") consisting of all investors who purchased or otherwise acquired Krispy Kreme, Inc. ("Krispy Kreme" or the "Company") securities between March 26, 2024 and May 7, 2025, inclusive (the "Class Period"); and (3) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel and The Law Offices of James Scott Farrin ("Farrin Law") as Liaison Counsel for the Class.[1]

### PRELIMINARY STATEMENT

The complaints in the Related Actions allege that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act. Krispy Kreme investors, including Mudiki, incurred significant losses following the disclosures of Defendants' alleged fraud, which caused Krispy Kreme's share price to fall sharply, damaging Mudiki and other Krispy Kreme investors.

---

[1] On May 16, 2025, the first-filed of the Related Actions was filed in this District, styled *Cameron v. Krispy Kreme, Inc. et al.*, No. 3:25-cv-00332 (the "*Cameron* Action"), alleging a class period including persons and entities that purchased or otherwise acquired Krispy Kreme securities between February 25, 2025 and May 7, 2025, inclusive. *See* Dkt. No. 1 ¶ 1. Then, on June 30, 2025, a second action alleging substantially the same wrongdoing as the *Cameron* Action against the same defendants was filed in this District, styled *Leodler v. Krispy Kreme, Inc. et al.*, No. 3:25-cv-00469 (the "*Leodler* Action"), alleging a larger class period including all investors who purchased or otherwise acquired Krispy Kreme securities between March 26, 2024 and May 7, 2025, inclusive. *See Leodler* Action, Dkt. No. 1 ¶ 1. Therefore, without conceding that this is the appropriate class period, to avoid excluding any potential class members, this motion has adopted the largest class period alleged in the *Leodler* Action.

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact. Here, the Related Actions are putative class actions alleging violations of the Exchange Act by the same defendants arising from substantially the same alleged fraud. As such, the Related Actions involve common questions of both law **and** fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of this litigation and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, Mudiki purchased 6,899 shares of Krispy Kreme common stock and 60 Krispy Kreme options contracts, expended $82,594 on these purchases, retained 6,464 of his shares of Krispy Kreme common stock and 60 open Krispy Kreme options contracts, and as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $61,464 as calculated on a first-in, first-out ("FIFO") basis, or $61,463 as calculated on a last-in, first-out ("LIFO") basis, in connection with his Class Period transactions in Krispy Kreme securities. *See* Declaration of Gary W. Jackson in Support of Motion ("Jackson Decl."), Exhibit ("Ex.") 1 at *2-3; Ex. 2 at 3. Accordingly, Mudiki believes that he has the largest financial interest in the relief sought in this litigation. Beyond his considerable financial interest, Mudiki also meets the applicable requirements of Rule 23 because his claims are typical of those of absent Class members and because he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute this litigation on behalf of the Class, Mudiki has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume. Additionally, Mudiki has selected Farrin Law, which has significant

2

experience in complex and class action litigation, as well as extensive familiarity with the Local

Rules and practice norms of this District, to serve as Liaison Counsel for the Class.

Accordingly, Mudiki respectfully requests that the Court enter an Order appointing him as

Lead Plaintiff for the Class and approving his selection of Pomerantz as Lead Counsel and Farrin

Law as Liaison Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the complaints in the Related Actions, Krispy Kreme, together with its

subsidiaries, produces doughnuts in the United States and internationally. *See* Dkt. No. 1 ¶ 2;

*Leodler* Action, Dkt. No. 1 ¶ 22. It operates in three segments: U.S., International, and Market

Development. *Leodler* Action, Dkt. No. 1 ¶ 22. The Company offers doughnut experiences

through hot light theater and fresh shops, delivered fresh daily branded cabinets and merchandising

units within grocery and convenience stores, quick service restaurants, club memberships, drug

stores, and digital channels. *Id.*

On October 26, 2022, the Company commenced a small-scale test to offer doughnuts at

McDonald's Corporation ("McDonald's") restaurants in Louisville, Kentucky and the surrounding

area. Dkt. No. 1 ¶ 2. On March 26, 2024, Krispy Kreme and McDonald's announced they would

expand their partnership nationwide beginning in the second half of 2024. *Id.*; *see also Leodler*

Action, Dkt. No. 1 ¶ 23.

Defendants provided investors with material information concerning Krispy Kreme's

financial growth and stability. *Leodler* Action, Dkt. No. 1 ¶ 2; *see also* Dkt. No. 1 ¶¶ 17-19.

Defendants' statements included, among other things, confidence in Krispy Kreme's expanded

national partnership with McDonald's restaurants with phased rollouts beginning in the second

half of 2024, and nationwide availability at participating restaurants expected by the end of 2026.

*Leodler* Action, Dkt. No. 1 ¶ 2; *see also* Dkt. No. 1 ¶¶ 17-18. Moreover, Defendants publicly

reported impressive financial results, outlooks, and guidance to investors, all while using dishonest advertising practices. *Leodler* Action, Dkt. No. 1 ¶ 2; *see also* Dkt. No. 1 ¶¶ 17-18.

Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Dkt. No. 1 ¶ 5; *see also Leodler* Action, Dkt. No. 1 ¶ 3. Specifically, Defendants failed to disclose: (1) that demand for Krispy Kreme products declined materially at McDonald's locations after the initial marketing launch; (2) that demand at McDonald's locations was a driver of declining average sales per door per week; (3) that the partnership with McDonald's was not profitable; (4) that the foregoing posed a substantial risk to maintaining the partnership with McDonald's; (5) that, as a result, the Company would pause expansion into new McDonald's locations; and (6) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis. Dkt. No. 1 ¶ 5; *see also Leodler* Action, Dkt. No. 1 ¶ 3.

The truth began to emerge on February 25, 2025, when Krispy Kreme issued a press release reporting disappointing fourth quarter 2024 financial results despite the recent partnership with McDonald's restaurants in March 2024. *Leodler* Action, Dkt. No. 1 ¶ 4. The Company reported a decline in "net revenue of $404 million, a decline of 10.4%" in addition to a decrease in "DFD average sales per door per week . . . driven by changing customer mix." *Id.*; Dkt. No. 1 ¶ 17.

In response to this news, Krispy Kreme's stock price declined from $9.13 per share on February 24, 2025 to $7.13 per share on February 25, 2025. *Leodler* Action, Dkt. No. 1 ¶ 5. However, Defendants materially misrepresented and/or concealed the true risks they faced with respect the Company's projected demand for Krispy Kreme products at McDonald's restaurants after the initial marketing launch, while also downplaying the costs associated with expanding into

new markets.  *Id.*

Investors remained in the dark until the truth emerged on May 8, 2025, when Defendants issued a press release announcing the Company's first quarter 2025 financial results.  *Id.* ¶ 6; *see also* Dkt. No. 1 ¶ 3.  Defendants reported "[n]et revenue was $375.2 million in the first quarter of 2025, a decline of 15.3% or $67.5 million."  *Leodler* Action, Dkt. No. 1 ¶ 6; Dkt. No. 1 ¶ 3.  The Company also reported a "net loss of $33.4 million, compared to prior year net loss of $6.7 million."  Dkt. No. 1 ¶ 3.  Further, the Company announced it was "reassessing the deployment schedule together with McDonald's while it works to achieve a profitable business model for all parties" and given "the uncertainty around the McDonald's deployment schedule, the Company is withdrawing its prior full year outlook and not updating it at this time."  *Leodler* Action, Dkt. No. 1 ¶ 6; Dkt. No. 1 ¶ 3.

Investors and analysts reacted immediately to Krispy Kreme's revelation.  *Leodler* Action, Dkt. No. 1 ¶ 7.  The price of Krispy Kreme's common stock declined from a closing market price of $4.33 per share on May 7, 2025 to $3.26 per share on May 8, 2025, a decline of about 25% in the span of just a single day on unusually heavy trading volume.  *See id.*; *see also* Dkt. No. 1 ¶ 4.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Mudiki and other Class members have suffered significant losses and damages.  *See* Dkt. No. 1 ¶ 6; *see also Leodler* Action, Dkt. No. 1 ¶¶ 3, 8.

**ARGUMENT**

I.     **THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES**

Consolidation of cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication. When actions involving a common question of law or fact are pending before the court, it may

5

order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a); *see also In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 431 (E.D. Va. 2000) ("[C]onsolidation is often warranted where multiple securities fraud class actions are based on the same public statements and reports." (internal quotation marks omitted)); *Hirtenstein v. Cempra, Inc.*, No. 1:16CV1303, 2017 WL 2874588, at *2 (M.D.N.C. July 5, 2017) (finding consolidation appropriate where securities fraud class actions "involve many of the same factual allegations regarding . . . misrepresentations and failures to disclose information" and individual defendants that "are officers or directors of [the same company]," and where "liability in each case will be determined under the [Exchange Act]").

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed[.]" 15 U.S.C. § 78u-4(a)(3)(A)(ii). As such, the PSLRA does not displace the traditional legal standards for consolidation under Rule 42(a).

Each of the Related Actions has been filed in this District alleging similar factual and legal grounds to support allegations of violations of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder, by the same defendants arising from the public dissemination of false and misleading information to investors. Accordingly, the Related Actions allege common questions of both law *and* fact and should be consolidated pursuant to Rule 42(a) for all purposes.

## II. MUDIKI SHOULD BE APPOINTED LEAD PLAINTIFF

Mudiki should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in this litigation to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Mudiki satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### A.     Mudiki Is Willing to Serve as Class Representative and Has Timely Filed This Motion to Be Appointed Lead Plaintiff.

On May 16, 2025, counsel for plaintiff in the first-filed of the Related Actions (*i.e.*, the *Cameron* Action) caused the statutorily required Notice to be published via *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action had been filed

against Krispy Kreme and other defendants, and advising investors in Krispy Kreme securities that they had 60 days from the date of the Notice's publication—*i.e.*, until July 15, 2025—to file a motion to be appointed as lead plaintiff. *See* Jackson Decl., Ex. 3 at 1.

Mudiki has filed the instant motion pursuant to the Notice, and he has attached a sworn Certification attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. 2 at 1-2. Accordingly, Mudiki satisfies the first requirement to serve as Lead Plaintiff of the Class.

### B. Mudiki Has the "Largest Financial Interest."

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). To the best of his knowledge, Mudiki has the largest financial interest of any Krispy Kreme investor or investor group seeking to serve as Lead Plaintiff. For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997). In accord with other courts nationwide,[2] these so-called *Lax* factors have been adopted and applied by courts in the Fourth Circuit. *See, e.g.*, *Tchatchou v. India Globalization Cap., Inc.*, No. 8:18-CV-03396-PWG, 2019

---

[2] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

WL 1004591, at *4 (D. Md. Feb. 28, 2019); *Giraudon v. Innovative Indus. Props., Inc.*, No. GLR-25-182, 2025 WL 1167847, at *2 (D. Md. Apr. 22, 2025).

During the Class Period, Mudiki: (1) purchased 6,899 shares of Krispy Kreme common stock and 60 Krispy Kreme options contracts; (2) expended $82,594 on these purchases; (3) retained 6,464 of his shares of Krispy Kreme common stock and 60 open Krispy Kreme options contracts; and (4) as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $61,464 as calculated on a FIFO basis, or $61,463 as calculated on a LIFO basis, in connection with his Class Period transactions in Krispy Kreme securities. *See* Jackson Decl., Ex. 1 at *2-3; Ex. 2 at 3. To the extent that Mudiki possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate plaintiff" within the PSLRA's meaning (15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb)), given that he also satisfies the requirements of Rule 23.

### C.      Mudiki Otherwise Satisfies the Requirements of Rule 23.

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In determining whether a lead plaintiff movant satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead,

at this stage of the litigation, only a *prima facie* showing of typicality and adequacy is required. *See Hirtenstein*, 2017 WL 2874588, at *4; *Chamblee v. Terraform Power, Inc.*, No. CV PX 16-981, 2016 WL 4039178, at *2 (D. Md. July 28, 2016). Moreover, the complaints in the Related Actions sufficiently plead Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Mudiki. *See* Dkt. No. 1 ¶¶ 24, 27; *Leodler* Action, Dkt. No. 1 ¶¶ 62, 65.

"The typicality requirement of [Rule 23] requires that a Lead Plaintiff suffer the same injuries as the class as a result of the defendant's conduct and has claims based on the same legal issues." *Johnson v. Pozen Inc.*, No. 1:07CV599, 2008 WL 474334, at *2 (M.D.N.C. Feb. 15, 2008) "[T]he claims of the class representative need not be identical [to] those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).

Mudiki's claims are typical of those of the Class. Mudiki alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Krispy Kreme, or by omitting to state material facts necessary to make the statements they did make not misleading. Mudiki, like other Class members, purchased Krispy Kreme securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosures of those misrepresentations and/or omissions that drove Krispy Kreme's share price downward. These shared claims, which are based on the same legal

theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

"Adequate representation requires a finding that the purported class representative and its attorney are capable of pursuing the litigation and that neither has a conflict of interest with other class members." *Johnson*, 2008 WL 474334, at \*2; *see also Hirtenstein*, 2017 WL 2874588, at \*4 (same).

Mudiki is an adequate representative for the Class. As set forth in greater detail below, in Pomerantz and Farrin Law, Mudiki has retained counsel highly experienced in vigorously and efficiently prosecuting securities cases and class actions such as the instant Related Actions, and submits his choice of Pomerantz and Farrin Law to the Court for approval as Lead Counsel and Liaison Counsel, respectively, for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). In addition to Pomerantz and Farrin Law, Mudiki is also represented by the Bronstein, Gewirtz & Grossman, LLC law firm in this litigation. There is no evidence of antagonism or conflict between Mudiki's interests and those of the Class. Moreover, Mudiki has submitted a sworn Certification declaring his commitment to protect the interests of the Class (*see* Jackson Decl., Ex. 2 at 1-2), and his significant financial interest demonstrates that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class.

Further demonstrating his adequacy, Mudiki has submitted a Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class. *See id.*, Ex. 4 at 1-4.

11

**D.** **Mudiki Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses.**

The presumption favoring Mudiki's appointment as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa)    will not fairly and adequately protect the interests of the class; or
>
> (bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Mudiki's ability and desire to fairly and adequately represent the Class has been discussed above.  Mudiki is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class.  Accordingly, Mudiki should be appointed Lead Plaintiff for the Class.

## III.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel for the Class, subject to the approval of the Court.  *See id.* § 78u-4(a)(3)(B)(v).  The Court should only interfere with a lead plaintiff's choice if necessary to protect the interests of the class.  *See In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 438 (E.D. Va. 2000) ("[A] district court should approve plaintiff's choice of lead counsel based solely on that counsel's competence, experience, and resources[.]"); *Hirtenstein*, 2017 WL 2874588, at \*5 (approving lead plaintiff's selection of counsel); *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))).

Here, Mudiki has selected Pomerantz as Lead Counsel and Farrin Law as Liaison Counsel for the Class.  Pomerantz is highly experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith.  *See* Jackson Decl., Ex. 5 at 1-11.  In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel.  *See id.* at 1.  For more than 85 years, Pomerantz has represented defrauded investors.  *See id.*  As Lead Counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth-largest class action settlement ever achieved in the United States.  *See id.* at 2.  Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* at 2-5.  More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class.  *See id.* at 2.

Farrin Law is also well-qualified to serve as Liaison Counsel for the Class.  As the Jackson Decl. reflects, Farrin Law maintains multiple offices throughout North Carolina, where the Related Actions are pending, and the firm specializes in class action matters, among other practice areas. *See* Jackson Decl. at 7.  Farrin Law's attorneys have experience in achieving substantial recoveries in class actions, and they have extensive familiarity with the Local Rules and practice norms of this District. *See id.* at 1-5, 7.

As a result of their extensive experience in litigation involving issues similar to those raised in the instant Related Actions, Mudiki's counsel, Pomerantz and Farrin Law, have the skill,

knowledge, expertise, and experience that will enable these firms to prosecute this litigation effectively and expeditiously. Thus, the Court may be assured that by approving Mudiki's selection of Pomerantz as Lead Counsel and Farrin Law as Liaison Counsel, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Mudiki respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Mudiki as Lead Plaintiff for the Class; and (3) approving his selection of Pomerantz as Lead Counsel and Farrin Law as Liaison Counsel for the Class.

Dated: July 15, 2025          Respectfully submitted,

**THE LAW OFFICES OF JAMES SCOTT FARRIN**

By: */s/ Gary W. Jackson*
GARY W. JACKSON
N.C. State Bar No. 13976
555 S. Mangum Street, Suite 800
Durham, NC 27701
Telephone: (919) 688-4991
gjackson@farrin.com

*Counsel for Lead Plaintiff Movant Teja Mudiki and Proposed Liaison Counsel for the Class*

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Movant Teja Mudiki and Proposed Lead Counsel for the Class*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Lead Plaintiff Movant Teja Mudiki*

15

**CERTIFICATION REGARDING USE OF ARTIFICIAL INTELLIGENCE (AI)**

I hereby certify the following:

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg.

Every statement and every citation to an authority contained in this document has been checked by an attorney and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Executed this 15th day of July, 2025.

/s/ Gary W. Jackson
Gary W. Jackson

16

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 15, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

SO CERTIFIED this 15th day of July, 2025.

/s/ Gary W. Jackson
Gary W. Jackson