# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | |
|---|---|
| DAVID CAMERON, Individually and on Behalf of All Others Similarly Situated, | Case No.: 3:25-cv-00332-MOC-SCR |
| Plaintiff, | Hon. Max O. Cogburn, Jr. |
| vs. | CLASS ACTION |
| KRISPY KREME, INC., JOSH CHARLESWORTH, and JEREMIAH ASHUKIAN, | ORAL ARGUMENT REQUESTED |
| Defendants. | |
| ELIZABETH LEODLER, Individually and on Behalf of All Others Similarly Situated, | Case No.: 3:25-cv-00469-MOC-DCK |
| Plaintiff, | Hon. Max O. Cogburn, Jr. |
| vs. | CLASS ACTION |
| KRISPY KREME, INC., JOSH CHARLESWORTH, and JEREMIAH ASHUKIAN, | ORAL ARGUMENT REQUESTED |
| Defendants. | |

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE WEST PALM BEACH POLICE PENSION FUND FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF SELECTION OF COUNSEL, AND IN OPPOSITION TO THE COMPETING MOTIONS

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ...................................................................... 1

II.     ARGUMENT .................................................................................................. 4

        A.      Dujmovic Is Not Adequate to Serve as Lead Plaintiff.................................4

                1.      Dujmovic's Motion and Sworn Declaration Demonstrate a Troubling
                        Lack of Candor .........................................................................................4

                2.      Dujmovic or "Mr. Profit's" Questionable Business Practices Raise
                        Numerous Adequacy Challenges........................................................7

                3.      Dujmovic Has Violated the Federal Securities Laws and Cannot Serve
                        as Lead Plaintiff ....................................................................................9

        B.      WPB Police Should Be Appointed Lead Plaintiff ....................................12

                1.      WPB Police Has the Largest  Financial Interest of the Remaining
                        Movants....................................................................................................12

                2.      WPB Police is Precisely the Type of Sophisticated Institutional
                        Investor That Congress Has Recognized as Being Well Suited to Serve
                        As Lead Plaintiff..................................................................................12

                3.      WPB Police is Otherwise Adequate and Typical and Should be
                        Appointed Lead Plaintiff.....................................................................14

        C.      The Remaining Motions Should Be Denied ...........................................15

III.    CONCLUSION............................................................................................. 15

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Applestein v. Medivation Inc.*,
    No. 10-cv-998, 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010) ................................................. 8

*Averza v. Super Micro Comput., Inc.*,
    No. 24-cv-6147, 2024 WL 5112222 (N.D. Cal. Dec. 12, 2024) ........................................... 3, 6

*Averza v. Super Micro Comput., Inc.*,
    No. 24-cv-6147, 2025 WL 1771455 (N.D. Cal. June 26, 2025) ................................................. 6

*Batter v. Hecla Mining Co.*,
    No. 19-cv-5719, 2020 WL 1444934 (S.D.N.Y. Mar. 25, 2020) ............................................... 11

*City of Ann Arbor Emps.' Ret. Sys. v. ICG, Inc.*,
    No. 2:07-cv-0226, 2007 WL 9718307 (S.D. W. Va. Jun. 13, 2007) ....................................... 12

*Clifton v. Willis*,
    No. 22-cv-3161, 2024 WL 1508832 (D. Colo. Mar. 5, 2024) ................................................... 5

*In re Boeing Co. Aircraft Sec. Litig.*,
    No. 19-cv-2394, 2019 WL 6052399 (N.D. Ill. Nov. 15, 2019) ................................................. 5

*In re Cable & Wireless, PLC, Sec. Litig.*,
    217 F.R.D. 372 (E.D. Va. 2003) ............................................................................................... 1

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ................................................................................................... 12

*In re Network Assocs., Inc., Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ..................................................................................... 9

*In re Safeguard Scientifics*,
    216 F.R.D. 577 (E.D. Pa. 2003) ............................................................................................... 8

*In re Surebeam Corp. Sec. Litig.*,
    No. 03-cv-1721, 2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) ................................................... 9

*Knurr v. Orbital ATK, Inc.*,
    220 F. Supp. 3d 653 (E.D. Va. Nov. 10, 2016) .................................................................. 12, 13

*Newman v. Eagle Building Techs.*,
    209 F.R.D. 499 (S.D. Fla. 2002) ............................................................................................. 11

Case 3:25-cv-00332-MOC-SCR    Document 34    Filed 07/29/25    Page 3 of 22

*Ollila v. Babcock & Wilcox Enters., Inc.*,
    253 F. Supp. 3d 827 (W.D.N.C. 2017) .............................................................. 4, 12

*Shiring v. Tier Techs., Inc.*,
    244 F.R.D. 307 (E.D. Va. 2007) ..................................................................... 4

*Sneed v. AcelRx Pharms., Inc.*,
    No. 21-cv-4353, 2021 WL 5964596 (N.D. Cal. Dec. 16, 2021)............................... 11

*Weisman v. Darneille*,
    78 F.R.D. 669, (S.D.N.Y. 1978) ..................................................................... 11

*Zemel Family Trust v. Philips Int'l Realty Corp.*,
    205 F.R.D. 434 (S.D.N.Y. 2002) ..................................................................... 11

**Statutes**

15 U.S.C. § 78j(b) ............................................................................................. 3, 10
15 U.S.C. § 78u-4(a)(3)(B) ............................................................................... 4, 14

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995)................... 12

## I.    PRELIMINARY STATEMENT

Currently pending before the Court are two motions by investors seeking appointment as Lead Plaintiff.[1]  The PSLRA provides that the "court shall adopt a presumption that the most adequate plaintiff" is the investor that "has the largest financial interest in the relief sought" by the class **and** "satisfies" the adequacy and typicality requirements of Rule 23.  "[F]inancial interest is just a beginning point, and courts acknowledge that they must also consider the movant's ability and willingness to adequately represent the class."  *In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 377 (E.D. Va. 2003).

Although Dujmovic has a larger claimed loss than WPB Police, Dujmovic should not be appointed as Lead Plaintiff because the limited and conflicting information he has provided to the Court raises serious questions about his credibility and ability to fairly and adequately protect the Class under Rule 23.  Dujmovic, operating under a panoply of undisclosed pseudonyms, aliases, and business interests including "Jan Dvic," "Mr. Profit," and "Profit Trade Room," purports to both be a "financial advisor" while simultaneously **disavowing** his status as a financial advisor to avoid regulatory scrutiny.[2]  Similarly mysterious are Dujmovic's whereabouts, which directly

---

[1] Defined terms take their meanings from the West Palm Beach Police Pension Fund's ("WPB Police") opening brief, ECF No. 24.  Internal quotations and citations are omitted.  All emphases added unless otherwise noted.  The only competing movant is Jan Dujmovic ("Dujmovic").  The other movants filed notices of withdrawal or non-opposition.  *See* ECF Nos. 29, 31, and 32.

[2] A complete and accurate copy of the LinkedIn profile of "Jan Dvic" is attached as Exhibit E to the Declaration of William R. Terpening in Support of the Memorandum of Law in Further Support of the Motion of WPB Police for Consolidation, Appointment as Lead Plaintiff, Approval of Selection of Counsel, and in Opposition to the Competing Motions ("Terpening Decl.") (touting how Jan Dvic, the purported "CEO & Owner at Profit Trade Room," provides "financial consulting," "financial analysis," "wealth management," "retirement planning," "financial planning," and "***financial advisory***," among other "services."  A complete and accurate copy of the United Kingdom Companies House information for "MRPROFIT LTD" is attached as Exhibit B to the Terpening Decl. (reflecting, under the "People" tab, that Jan Dujmovic is the sole officer and director of MRPROFIT LTD).  Complete and accurate copies of the "Website Refund Policy"

1

impact his ability to submit to discovery and properly monitor the litigation. He appears to operate on several continents at once, from the "International Free Zone Authority" in the United Arab Emirates,[3] Covent Garden in London, United Kingdom,[4] and the headquarters of the New York Stock Exchange.[5]

Dujmovic's business dealings raise even more questions. Rather than simply operating an innocuous "educational subscription service" as described in his certification, Dujmovic in fact operates a dubious, for-profit, subscription-based stock advising website called "Profit Trade Room." The website bears several of the hallmark red flags investors should be wary of: promises of thousand-fold returns with minimal time and effort expended, and little to no transparency about the promoter's qualifications. Flanked by photos and videos of high-priced Ferraris and Lamborghinis and showcasing an ultra-luxury lifestyle,[6] Dujmovic's websites include "testimonials" and graphics demonstrating how investors can make massive investment returns (*e.g.*, 517%) using highly speculative trading strategies such as day trading, swing trading, and "sniper trading." Critically, despite providing investment advice and holding himself out as an

---

and "Website Terms of Service" for Profit Trade Room are attached as Exhibits I, J to the Terpening Decl. (disclaiming, "[w]e are not registered or licensed financial advisors or brokers").

[3] A complete and accurate copy of the "Profit Trade Room" website home page (https://profittraderoom.com) is attached as Exhibit F to the Terpening Decl. (reflecting "Profit Trade Room LLC, International Free Zone Authority, P.O. Box 7800" but a 718-area code number, which serves the New York City boroughs of Brooklyn, Queens, Staten Island, and the Bronx). *See* "Website Terms of Service" for Profit Trade Room, Terpening Decl., Exhibit J (reflecting, under Section 18, terms of service "shall be governed and construed in accordance with the laws of International Free Zone Authority, P.O. Box 7800, Fujairah, United Arab Emirates").

[4] *See* United Kingdom Companies House information for "MRPROFIT LTD," Terpening Decl., Ex. B (reflecting, under the "Overview" and "People" tabs, an address of "71-75 Shelton Street, Covent Garden, London, United Kingdom, WC2H 9JQ").

[5] A complete and accurate copy of the LinkedIn profile of "Profit Trade Room" is attached as Exhibit C to the Terpening Decl. (reflecting a "Location" of "11 Wall St, New York, New York 10005, US[,]" the same address as the New York Stock Exchange in the Financial District).

[6] *See*, *e.g.*, Facebook profile for "Profit Trade Room," https://www.facebook.com/ProfitTradeRoom/videos.

experienced stock advisor, Dujmovic does not appear to be licensed by *any* relevant regulatory authority, potentially subjecting him to significant civil and criminal prosecution and penalties.

Even more shocking: Dujmovic appears to be in violation of the very federal securities laws and SEC disclosure regulations as the Defendants in this case (*see* 15 U.S.C. § 78j(b), making it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance") because, as a financial advisor, Dujmovic is legally obligated—yet failed—to disclose his ownership interest in the stocks he promotes to his clients, *including Krispy Kreme common stock*.[7]

Dujmovic's appointment as lead plaintiff, and the unique defenses and issues he will face, will significantly prejudice the class, especially when the next largest investor, WPB Police—a public fund in Florida for the benefit of retired law enforcement officers—operates under the utmost transparency and is accustomed to serving in a fiduciary capacity.  Accordingly, Dujmovic's motion should be denied, and WPB Police should be appointed Lead Plaintiff.[8]

---

[7] A complete and accurate copy of the Twitter profile for Profit Trade Room, reflecting Krispy Kreme common stock tips (Nasdaq: DNUT) from July 1, 2021 through August 8, 2024, is attached as Exhibit G to the Terpening Decl. (reflecting no disclosure of ownership interest).  A complete and accurate copy of the Twitter profile for Profit Trade Room with tweets from February 28, 2025 through July 15, 2025 is attached as Exhibit H to the Terpening Decl. (reflecting no disclosure of ownership interest in any stock that Profit Trade Room promotes).

[8] At a minimum, the Court should order discovery from Dujmovic so that the Class can be assured that its claims will be handled by a responsible fiduciary.  *See* Motion by WPB Police Seeking Discovery of Jan Dujmovic, filed concurrently herewith; *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iv); *Averza v. Super Micro Comput., Inc.*, No. 24-cv-6147, 2024 WL 5112222, at *6 (N.D. Cal. Dec. 12, 2024) (granting limited discovery to determine adequacy of lead plaintiff movant).

3

## II. ARGUMENT

### A. Dujmovic Is Not Adequate to Serve as Lead Plaintiff

The PSLRA requires the Court to appoint as Lead Plaintiff the movant that the Court "determines to be most capable of adequately representing the interests" of the Class—i.e., the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i); *see also Ollila v. Babcock & Wilcox Enters., Inc.*, 253 F. Supp. 3d 827, 829 (W.D.N.C. 2017) (describing the adequacy requirement). Only a movant who "otherwise satisfies the [typicality and adequacy] requirements of Rule 23" can trigger the presumption. *Id.* Under the "well-established" standards of Rule 23, the party seeking class representation bears the "burden of demonstrating that his claims are typical of the class he seeks to represent and that he is an adequate class representative." *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 316 (E.D. Va. 2007). Even if the presumption is triggered, it can be rebutted with "evidence that would undercut the proposed lead plaintiff's ability to fairly and adequately represent the class and a lead plaintiff that would be subject to unique defenses that would undermine its adequacy to represent the class." *Babcock*, 253 F. Supp. 3d at 829.

#### 1. Dujmovic's Motion and Sworn Declaration Demonstrate a Troubling Lack of Candor

Dujmovic's cryptic background and illegitimate stock promotion website render him inadequate to represent the Class.[9] While Dujmovic, a Slovenian national,[10] claims to reside in Dubai, United Arab Emirates, ECF No. 14-4, ¶ 2—which is consistent with Jan Dujmovic's "Country of residence" in his U.K. Companies House information and the United Arab Emirates

---

[9] *See* Profit Trade Room website (https://profittraderoom.com), Terpening Decl., Ex. F.

[10] *See* United Kingdom Companies House information for "MRPROFIT LTD," Terpening Decl., Ex. B (reflecting, under the "People" tab, that Dujmovic is a Slovenian national).

4

Ministry of Economy & Tourism license for "PROFIT TRADE ROOM_FZCO"[11]—"Jan Dvic" ("CEO & Owner at Profit Trade Room") claims to be located in New York.[12] Jan Dujmovic and "Jan Dvic" appear to be the same person, not only because Jan Dvic purports to be the CEO & Owner of Profit Trade Room, but because their birthdays appears to be the same.[13]

As detailed below, Dujmovic's failure to disclose any of this conflicting information about his identity and business is fatal to his motion. Indeed, "[a]s a fiduciary for the class," Dujmovic would be "required to adhere to the highest standards of honesty and integrity[,]" and his lack of candor shows he will not. *Clifton v. Willis*, No. 22-cv-3161, 2024 WL 1508832, at *5 (D. Colo. Mar. 5, 2024) (rejecting movant based on his "lack of candor" and "lack of disclosure"); *recommendation adopted*, 2024 WL 1508831, at *3 (noting that presumptive lead plaintiff "rebutted by evidence that he lacked candor and the requisite characteristics or credibility to serve as the putative class's fiduciary in this matter."). Here, Dujmovic must be rejected given his unscrupulous business endeavors and, as in *Willis*, his "use of aliases—and lack of disclosure regarding the same—raise further questions about his ability or desire to be straightforward with the putative class or the Court." *Id.*; *see also In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-2394, 2019 WL 6052399, at *5 (N.D. Ill. Nov. 15, 2019) (appointing institutional investor over family whose lack of candor "leaves the Court with virtually no basis to assess their adequacy").

---

[11] *See id.* (reflecting, under the "People" tab, that Dujmovic resides in the United Arab Emirates). A complete and accurate copy of the Economic License Details for "PROFIT TRADE ROOM _ FZCO" issued by United Arab Emirates Ministry of Economy & Tourism is attached as Exhibit A to the Terpening Decl.

[12] *See* Jan Dvic LinkedIn profile, Terpening Decl., Ex. E.

[13] *See* United Kingdom Companies House information for "MRPROFIT LTD," Terpening Decl., Ex. B (reflecting, under the "People" tab, Dujmovic's date of birth as "April 1990"). A complete and accurate copy of the LinkedIn profile of "Jan Dvic," with the "Contact Info" window selected, is attached as Exhibit D to the Terpening Decl. (reflecting Jan Dvic's birthday is "April 28").

5

Even if the Court is inclined to order discovery first,[14] the Court would inevitably disqualify Dujmovic because courts routinely reject inadequate movants that fail to meet their "obligations of candor to the Court and the putative class." *Averza v. Super Micro Comput., Inc.*, No. 24-cv-6147, 2025 WL 1771455, at *11 (N.D. Cal. June 26, 2025). In *Super Micro*, for example, the Court ordered a first-place lead plaintiff movant to produce discovery about its "ownership structure," "decision-making processes," "financial condition," and the "circumstances of [its] purchase of Super Micro stock." *Averza v. Super Micro Comput., Inc.*, No. 24-cv-6147, 2024 WL 5112222, at *5-6 (N.D. Cal. Dec. 12, 2024). After discovery, the Court explained that although "there must be evidence" to undermine a movant's credibility, at the lead plaintiff stage "it is easier to disqualify a presumptive lead plaintiff due to credibility concerns" because, "unlike class certification, which requires a preponderance of the evidence, . . . lead plaintiff selection is governed by the lower 'genuine and serious doubt' standard." *Super Micro*, 2025 WL 1771455, at *10 ("In fact, courts have disqualified lead plaintiff candidates for making incorrect representations due to honest mistakes, even without evidence that those candidates intended to mislead") (collecting cases).

Ultimately, the Court disqualified the first-place movant as inadequate after several failed attempts to correct the record, and appointed an institutional investor, in part because the movant demonstrated "an unwillingness to place this litigation—and by extension, the interests of the putative class—above [its] privacy interests[,]" which "is inconsistent with serving as lead plaintiff." *See id.* at *11, 13 ("The drip-by-drip nature of these continuous 'new' revelations . . . casts serious doubt about [movant's] willingness or ability to meet its obligations of candor to the Court and the putative class"). With or without discovery, Dujmovic must be rejected.

---

[14] *See* Motion by WPB Police Seeking Discovery of Jan Dujmovic, filed concurrently herewith.

### 2. Dujmovic or "Mr. Profit's" Questionable Business Practices Raise Numerous Adequacy Challenges

While Dujmovic told the Court he "ha[s] an online business, selling educational subscription services[,]" ECF No. 14-4, ¶ 2, in reality Profit Trade Room is a for-profit stock promotion website that provides investment advice, including personal consultations, for a subscription fee.[15] At the highest level or "Gold" membership, an investor can receive "day trades and swing picks" for $744 a month, along with "1-on-1" consultations.[16] Investors are then given the opportunity for private chat rooms and, as touted on the website, the ***opportunity to make "+677.0% in 3 weeks!***"[17] In order to achieve these fairytale results, Profit Trade Room offers investors "[d]irect access to experienced individuals anytime during the day at crucial moments. . . . It can be done through private 1-on-1 support or through chat room community."[18]

Subscribers also have the opportunity to generate even greater profits through what appears to be a multi-level-marketing scheme referred to as Profit Trade Room's "Affiliate" program, which purportedly allows investors to earn commissions by promoting the Profit Trade Room website, including hefty monthly fees for each investor referral who remains subscribed.[19] The website is replete with "testimonials" of investors who have made enormous, short-term profits

---

[15] *See* Profit Trade Room website (https://profittraderoom.com), Terpening Decl., Ex. F.

[16] *See id.* (https://profittraderoom.com) (promoting, under the "Pricing" tab, Profit Trade Room's "MOST POPULAR" Gold package, whereby investors can "GET 100%, MAX YOUR GAINS").

[17] *See id.* (https://profittraderoom.com) (touting, under the "Case Study" tab, a purported "trading account statement from a member showing +$12,149.53 total net profit made in about 3 weeks after starting with only $1,794 account balance").

[18] *See id.* (https://profittraderoom.com) (touting direct access to "experienced traders").

[19] *See id.* (https://profittraderoom.com) (touting, under the "Affiliate" tab, that "top affiliates make upwards of $4,000 monthly doing this just as a side income!"). A complete and accurate copy of the Reddit thread titled, "Anyone part of Profit Trade Room chat group?" is attached as Exhibit K to the Terpening Decl. (reflecting, for CoolPercentage2356: "I purchased the option course and I paid for the chat option;" and for Far_Duck+5906: "I bought their options course and the chat").

7

using risky strategies such as swing trades, day trades, and "sniper trades."[20] These unrealistic promises are bolstered by Jan Dvic's Linkedin profile, which features similar over-the-top characterizations of subscribers' meteoric, and often "minutes" fast, investment returns.[21]

Importantly, while Profit Trade Room expressly states that it is ***not*** an investment advisor,[22] Jan Dvic (the purported CEO & Owner at Profit Trade Room) publicly characterizes himself as a financial advisor on his LinkedIn profile.[23] Despite any such boilerplate disclaimers, the very nature of the investment advice that Dujmovic provides through his website demonstrates that Profit Trade Room ***is*** operating as a financial advisor. Following extensive searches by WPB Police's counsel, Dujmovic and his related entities appear to have failed to register with ***any*** appropriate regulatory authority. Indeed, neither Dujmovic nor any of his related pseudonyms, aliases, or business interests appear to be licensed to provide financial advice by the Securities and Exchange Commission ("SEC"), the Financial Industry Regulatory Authority ("FINRA"), the State of New York, or any other relevant authority in the United States, potentially subjecting him to a plethora of civil and/or criminal prosecution and penalties, including jail time.

---

[20] *See id.* (https://profittraderoom.com) (touting, under the "Testimonials" tab, a "Trading community with the most testimonials! Over 1,000 and counting!"); *see also In re Safeguard Scientifics*, 216 F.R.D. 577, 582 (E.D. Pa. 2003) (rejecting proposed class representative who faced unique defenses due to his "employment as a day trader . . . who typically focuses on technical price movements rather than price"); *Applestein v. Medivation Inc.*, No. 10-cv-998, 2010 WL 3749406, at *3 (N.D. Cal. Sept. 20, 2010) (rejecting lead plaintiff movant where record "raise[d] serious concerns about his typicality and about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions").

[21] *See* LinkedIn profile of "Jan Dvic" Terpening Decl., Ex. E.

[22] *See* "Website Refund Policy" and "Website Terms of Service" for Profit Trade Room, Terpening Decl., Exs. I, J (disclaiming, "[w]e are not registered or licensed financial advisors or brokers").

[23] *See* LinkedIn profile of "Jan Dvic" Terpening Decl., Ex. E (touting how Jan Dvic provides various "Services," including "financial consulting," "financial analysis," "wealth management," "retirement planning," "financial planning," and "***financial advisory***," among others).

8

The questions raised regarding Dujmovic's personal background and unregulated advisory business—that WPB Police has uncovered—are more than enough to disqualify Dujmovic as inadequate. Courts across the country have consistently found that "an individual is an inadequate lead plaintiff due to unrelated misconduct which implicates the individual's ability to serve as a fiduciary." *In re Surebeam Corp. Sec. Litig.*, No. 03-cv-1721, 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004). In *Surebeam*, the Court disqualified a member of a four-member movant group whose president and principal representative was alleged to be "incurably tainted by securities industry misconduct." *Id.* The Court reasoned that even "[w]ithout comment or consideration of [president's] guilt or innocence as to the underlying charges, . . . there is at least a potential that [group member] will be subject to unique defenses and will not fairly and adequately protect the interests of the class." *Id.* (finding that group member "is incapable of serving as lead plaintiff").

The same is true for Dujmovic here: even without proof that he has run afoul of registration requirements with the SEC, FINRA, or New York State—and may be subject to civil and/or criminal prosecution and liability—the mere potential that Dujmovic would subject the class here to unique defenses and fail to fairly and adequately represent their interests is fatal to his motion. In *In re Network Associates, Inc., Securities Litigation*, for example, the Court disqualified a first-place movant as inadequate given unrelated fraud investigation into two related entities. 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) ("[T]he Court is unwilling to install an enterprise under such a cloud in a position of trust and confidence"). Dujmovic cannot be trusted to protect the Class.

### 3. Dujmovic Has Violated the Federal Securities Laws and Cannot Serve as Lead Plaintiff

In addition to the conflicting information concerning Profit Trade Room and the legitimacy of its operations, Dujmovic's inadequacies as a potential lead plaintiff are compounded by the fact

that he appears to be violating the ***very same*** securities laws and disclosure obligations as the Defendants in this case. *See* 15 U.S.C. § 78j(b) (making it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance"). As WPB Police has uncovered, Profit Trade Room—as well as Dujmovic's LinkedIn, Twitter, Facebook, and other sites maintained through his various pseudonyms and aliases—include a plethora of stock promotions. However, ***none*** of these sites include any mention of Dujmovic's ownership interest in the securities he promotes.[24] As a financial advisor, Dujmovic is legally obligated—yet failed—to disclose his ownership interest in the securities he promotes, ***including Krispy Kreme common stock***.[25] Krispy Kreme is just one instance: whether Dujmovic profited by pumping other stocks for which he did not disclose his ownership interest is a subject for discovery. Regardless of the answer, Dujmovic has failed to abide by the underlying securities disclosure obligations, yet he seeks to be a fiduciary on behalf of a putative class.[26]

The Class should not be subjected to a lead plaintiff like Dujmovic who is: a) subject to a host of civil and/or criminal prosecution and liability, including severe financial fines per violation and possible jail time;[27] and b) himself guilty of violating the same securities laws from which he

---

[24] *See*, *e.g.*, Profit Trade Room Twitter profile with tweets from February 28, 2025 through July 15, 2025, Terpening Decl., Ex. H (reflecting no disclosure of ownership interest in any stock).

[25] *See* Twitter profile for Profit Trade Room with Krispy Kreme common stock tips (Nasdaq: DNUT) from July 1, 2021 through August 8, 2024, Terpening Decl., Ex. G (reflecting no disclosure of ownership interest in Krispy Kreme common stock).

[26] *See* Investment Advisers Act of 1940, Prohibited transactions by investment advisors, 15 U.S.C. § 80b-6 (making it unlawful for investment advisers: "(1) to employ any device, scheme, or artifice to defraud any client or prospective client;" "(2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client;" and "(4) to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative").

[27] *See* Investment Advisors Act of 1940, Penalties, 15 U.S.C. § 80b-17 ("Any person who willfully violates any provision of this subchapter, or any rule, regulation, or order promulgated by the Commission under authority thereof, shall, upon conviction, be fined not more than $10,000, imprisoned for not more than five years, or both").

now seeks redress. *See Newman v. Eagle Building Techs.*, 209 F.R.D. 499 (S.D. Fla. 2002) (disqualifying lead plaintiff movant "[d]ue to the seriousness" of violations of the federal securities laws by movant "and his brokerage firm"); *see also Sneed v. AcelRx Pharms., Inc.*, No. 21-cv-4353, 2021 WL 5964596, at *4 (N.D. Cal. Dec. 16, 2021) (rejecting movant in part due to lack of candor about financial crimes and offenses); *Batter v. Hecla Mining Co.*, No. 19-cv-5719, 2020 WL 1444934, at *7 (S.D.N.Y. Mar. 25, 2020) (rejecting movant with history of securities violations and other issues affecting credibility—including misappropriating client funds acting as a stockbroker and failing to renew New York company registration—due to "the potential for him to be subject to unique defenses that could jeopardize the certification of a class").

Appointing a lead plaintiff such as Dujmovic, plagued by these unique defenses, would also be the death knell of class certification. In *Zemel Family Trust v. Philips Int'l Realty Corp.*, for example, the Court rejected a family trust's motion for class certification because the father's "lack of honesty and trustworthiness"—regarding his affiliation with entities that committed securities violations that he did not personally commit—"shows that he does not meet the standards of a fiduciary who will 'fairly and adequately protect the interests' of the class he seeks to represent." 205 F.R.D. 434, 436-37 (S.D.N.Y. 2002) ("Even though [the father] was not named individually in the SEC cease and desist orders, his significant involvement . . . makes him uniquely susceptible to defenses that may not be asserted against other class members"); *see also Weisman v. Darneille*, 78 F.R.D. 669, (S.D.N.Y. 1978) (denying class representative status to a plaintiff who was convicted of violating Section 10(b), the very statute he invoked in complaint). At bottom, Dujmovic's myriad of credibility issues render him inadequate to represent the Class as a lead plaintiff and class representative at a later stage in the litigation.

11

### B. WPB Police Should Be Appointed Lead Plaintiff

#### 1. WPB Police Has the Largest Financial Interest of the Remaining Movants

Because Dujmovic cannot satisfy Rule 23's requirements, the Court must follow the PSLRA's sequential process and consider "the movant with the next largest loss" for Lead Plaintiff appointment. *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001). That movant is WPB Police, which also satisfies all criteria for appointment. With a loss of approximately $355,789 on a LIFO basis, WPB Police incurred the largest loss of any of the remaining movants. *See Ollila*, 253 F. Supp. 3d at 830 (comparing movants' claimed losses and finding movant with largest loss had "the largest financial stake").

#### 2. WPB Police is Precisely the Type of Sophisticated Institutional Investor That Congress Has Recognized as Being Well Suited to Serve As Lead Plaintiff

WPB Police is precisely the type of lead plaintiff envisioned by Congress in its enactment of the PSLRA—a sophisticated institutional investor with a substantial interest in the litigation. *See* H.R. Conf. Rep. No. 104-369, at 34, *reprinted in* 1995 U.S.C.C.A.N. at 733 ("[I]ncreasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Indeed, this Court and others in this Circuit recognize that "the purpose of the PSLRA was to encourage institutional investors to serve as lead plaintiff." *See Ollila*, 253 F. Supp. 3d at 831; *Knurr v. Orbital ATK, Inc.*, 220 F. Supp. 3d 653, 662 (E.D. Va. Nov. 10, 2016) ("[A]ppointing [institutional investor] as lead plaintiff in lieu of the presumptive most adequate plaintiff promotes the PSLRA's purpose.") (alterations in the original and internal citations omitted); *City of Ann Arbor Emps.' Ret. Sys. v. ICG, Inc.*, No. 2:07-cv-0226, 2007 WL 9718307, at *6 (S.D. W. Va. Jun. 13, 2007) ("It is

universally agreed that the PSLRA demonstrated a preference for institutional investors to serve as lead plaintiffs.").

WPB Police is thus the exact type of institutional investor that Congress sought to summon and empower when it enacted the PSLRA. WPB Police has experience successfully litigating securities class actions, including serving as lead Plaintiff and class Representative in *Oliveira v. Home Loan Servicing Solutions, Ltd.*, No. 0:16-cv-60165 (S.D. Fla.) and *In re BUCA, Inc. Securities Litigation*, No. 0:05-cv-01762 (D. Minn.).[28] Additionally, WPB Police has also successfully defended shareholders' rights through derivative litigation.[29] *See Knurr*, 220 F. Supp. 3d at 662 (noting competing pension fund movants' "experience and resources to litigate this action effectively on behalf of the class).

In addition to its valuable experience in successfully leading representative actions on behalf of aggrieved shareholders and supervising counsel, WPB Police has substantial experience serving in a fiduciary capacity—experience Mr. Dujmovic lacks. WPB Police manages the retirement income needs and other benefits for more than 590 members and retirees who serve and protect West Palm Beach, Florida as police officers. The benefit plans for its members exceed $492 million in assets, and WPB Police regularly publishes its independently audited financial statements on its website. As a Florida governmental employee retirement system, WPB Police is highly regulated by the State of Florida and the City of West Palm Beach.

---

[28] Moreover, WPB Police is currently serving as lead plaintiff in *In re SelectQuote, Inc. Sec. Litig.*, No. 21-cv-6903 (S.D.N.Y.) and *In re Xponential Fitness Sec. Litig.*, No. 24-cv-0285 (C.D. Cal.).

[29] *See In re Amtrust Financial Services, Inc. Appraisal and Stockholder Litigation*, No. 2018-0396 (Del. Ch.), in which WPB Police achieved a $40 million settlement in a derivative action on behalf of Amtrust Financial Services, Inc. Additionally, WBP Police obtained important corporate governance reforms in *Walgreen Co. Derivative Litigation*, No. 13-cv-5471 (N.D. Ill.).

WPB Police understands the fiduciary duties of a lead plaintiff and is willing to oversee the vigorous prosecution of this action as a fiduciary for the Class by, among other things, reviewing and authorizing the filing of pleadings and attending court proceedings, depositions, settlement mediations, and hearings as needed. Thus, WPB Police is the very personification of the lead plaintiff contemplated by Congress—an institution accustomed to acting as a fiduciary that closely supervises its counsel and has a demonstrated track record of success.

### 3. WPB Police is Otherwise Adequate and Typical and Should be Appointed Lead Plaintiff

In contrast to Dujmovic, WPB Police is the paradigmatic Lead Plaintiff and readily satisfies the typicality and adequacy requirements of Rule 23. WPB Police's claims are typical of the claims of the rest of the class because, like all other class members, WPB Police: (1) invested in Krispy Kreme securities during the Class Period, (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions, and (3) was harmed when the truth was revealed. *See* ECF No. 24 at 11. Thus, WPB Police's claims are typical of those of other class members as its claims arise out of the same course of events.

WPB Police also satisfies the Rule 23 adequacy requirement because it will "fairly and adequately protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). As evidenced by the injuries WPB Police suffered as a result of its purchases of Krispy Kreme securities at prices artificially inflated by Defendants' false and misleading statements, the interests of WPB Police and the rest of the class are clearly aligned and not antagonistic in any way. WPB Police has also taken significant steps demonstrating that it will protect the interests of the Class by retaining highly qualified and experienced counsel to prosecute these claims. Moreover, as an institutional investor charged with serving as a fiduciary for its constituents, WPB Police has experience in sophisticated financial matters, as well as capable staff and ample resources to prosecute this

14

action, that will in turn benefit the Class. *See* ECF No. 24 at 12. Thus, WPB Police satisfies the typicality and adequacy requirements of Rule 23.

Accordingly, because Dujmovic is unable to satisfy the requirements of Rule 23, WPB Police should be appointed Lead Plaintiff as it has a large financial interest in the outcome of this litigation, is the only institutional investor seeking appointment as Lead Plaintiff, has prior experience in serving as a lead plaintiff, and otherwise satisfies the requirements of Rule 23.

### C. The Remaining Motions Should Be Denied

Because WPB Police has met all the requirements for appointment as Lead Plaintiff, and the remaining movants lack the largest financial interest, their motions should be denied.

## III. <u>CONCLUSION</u>

For the reasons discussed above and in its opening motion, WPB Police respectfully requests that the Court appoint it as Lead Plaintiff and otherwise grant its motion.

Dated: July 29, 2025

Respectfully submitted,

**TERPENING LAW PLLC**

By: */s/ William R. Terpening*

William R. Terpening
NC Bar No. 36418
221 West 11th Street
Charlotte, NC 28202
Tel.: (980) 265-1700
terpening@terpeninglaw.com

*Local Counsel for Proposed Lead Plaintiff*
*West Palm Beach Police Pension Fund, and*
*Proposed Local Counsel for the Class*

**SAXENA WHITE P.A.**
Marco A. Dueñas (*pro hac vice* forthcoming)
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 631-3611

15

mduenas@saxenawhite.com

*Counsel for Proposed Lead Plaintiff West Palm Beach Police Pension Fund, and Proposed Lead Counsel for the Class*

**KLAUSNER KAUFMAN JENSEN & LEVINSON**
Robert D. Klausner (*pro hac vice* forthcoming)
7080 NW 4th Street
Plantation, Florida 33317
Tel.: (954) 916-1202
Fax: (954) 916-1232
bob@robertdklausner.com

*Additional Counsel for Proposed Lead Plaintiff West Palm Beach Police Pension Fund*

16

## ARTIFICIAL INTELLIGENCE CERTIFICATION

I HEREBY CERTIFY that (1) no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, and Bloomberg; and (2) every statement and every citation to an authority contained in this document has been checked by an attorney in this case and working at their direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ William R. Terpening*
William R. Terpening

17

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 29, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

/s/ William R. Terpening
William R. Terpening