# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

|  |  |
|---|---|
| DAVID CAMERON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>KRISPY KREME, INC., JOSH CHARLESWORTH, and JEREMIAH ASHUKIAN,<br><br>Defendants. | Case No.: 3:25-cv-00332-MOC-SCR<br><br>Hon. Max O. Cogburn, Jr.<br><br><u>CLASS ACTION</u><br><br>**ORAL ARGUMENT REQUESTED** |
| ELIZABETH LEODLER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>KRISPY KREME, INC., JOSH CHARLESWORTH, and JEREMIAH ASHUKIAN,<br><br>Defendants. | Case No.: 3:25-cv-00469-MOC-DCK<br><br>Hon. Max O. Cogburn, Jr.<br><br><u>CLASS ACTION</u><br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
MOTION OF THE WEST PALM BEACH POLICE PENSION FUND
FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND
<u>APPROVAL OF SELECTION OF COUNSEL</u>**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. ARGUMENT .............................................................................................................. 3

    A. Dujmovic Is Inadequate to Serve as Lead Plaintiff .......................................................4

        1. Dujmovic Violates Federal Securities Laws and Operates as an Unlicensed Financial Adviser ...............................................................................4

        2. Dujmovic's Attempt to Invoke the Publishers Exclusion is Meritless .............7

    B. WPB Police Should Be Appointed Lead Plaintiff .....................................................10

III. CONCLUSION............................................................................................................. 11

i

<u>**TABLE OF AUTHORITIES**</u>

**PAGE(S)**

**Cases**

*Averza v. Super Micro Comput., Inc.*,
  No. 24-cv-6147, 2024 WL 5112222 (N.D. Cal. Dec. 12, 2024)............................................ 3, 9

*Averza v. Super Micro Comput., Inc.*,
  No. 24-cv-6147, 2025 WL 1771455 (N.D. Cal. June 26, 2025)................................................. 3

*Banurs v. Li Auto Inc.*,
  No. 24-cv-3470, 2024 WL 5247763 (E.D.N.Y. Dec. 30, 2024).............................................. 7

*Batter v. Hecla Mining Co.,*
  No. 19-cv-4883, 2020 WL 1444934 (S.D.N.Y. Mar. 25, 2020).................................................. 9

*Borenstein v. Finova Grp. Inc.*,
  No. 00-cv-619, 2000 WL 34524743 (D. Ariz. Aug. 30, 2000) .................................................. 6

*Chang v. U.S.*,
  327 F.3d 911 (9th Cir. 2003) ................................................................................................. 10

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
  No. 20-cv-2031, 2020 WL 2614703 (S.D.N.Y. May 22, 2020) .............................................. 11

*Francisco v. Abengoa, S.A.*,
  No. 15-cv-6279, 2016 WL 3004664 n.5 (S.D.N.Y. May 24, 2016) ........................................ 11

*Gluck v. CellStar Corp.*,
  976 F. Supp. 542 (N.D. Tex. 1997) ........................................................................................ 5

*Grad v. Ironnet, Inc.*,
  No. 22-cv-449, 2022 WL 2789899 (E.D. Va. July 15, 2022)................................................... 5

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*,
  No. 04–cv-0265, 2004 WL 1221353 (E.D. Pa. June 3, 2004)................................................. 11

*In re Boeing Co. Aircraft Sec. Litig.*,
  No. 19-cv-2394, 2019 WL 6052399 (N.D. Ill. Nov. 15, 2019) ............................................ 2, 3

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ................................................................................................. 3

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009)..................................................................................................... 10

ii

*In re Tronox, Inc. Sec. Litig.*,
262 F.R.D. 338 (S.D.N.Y. 2009) ................................................................................. 5

*In re Vonage Initial Pub. Offering Sec. Litig.*,
No. 07-cv-177, 2007 WL 2683636 n.15 (D.N.J. Sept. 7, 2007) ............................... 11

*Kasilingam v. Tilray, Inc.*,
No. 20-cv-3459, 2020 WL 4530357 (S.D.N.Y. Aug. 6, 2020) .................................... 3

*Lowe v. SEC*,
472 U.S. 181 (1985) ................................................................................................... 8

*Newman v. Eagle Building Techs.*,
209 F.R.D. 499 (S.D. Fla. 2002) ................................................................................ 4

*Plymouth Cnty. Ret. Sys. v. Apache Corp.*,
566 F. Supp. 3d 712 (S.D. Tex. 2021) ...................................................................... 11

*Rabin v. John Doe Market Makers*,
254 F.Supp.3d 754 (E.D. Pa. 2015) .......................................................................... 11

*Reiger v. Altris Software, Inc.*,
No. 98-cv-528, 1998 WL 1986953 (S.D. Cal. Sept. 14, 1998) ................................... 11

*Savino v. Comput. Credit, Inc.*,
164 F.3d 81 (2d Cir. 1998) .......................................................................................... 9

*SEC v. Park*,
99 F. Supp. 2d 889 (S.D.N.Y. 2000) ................................................................. *passim*

*SEC v. Terry's Tips, Inc.*,
409 F. Supp. 2d 526 (D. Vt. 2006) ..................................................................... 5, 6, 8

*Shim v. DZS Inc.*,
No. 23-cv-549, 2025 WL 634811 (E.D. Tex. Feb. 26, 2025) ...................................... 7

*Shiring v. Tier Techs., Inc.*,
244 F.R.D. 307 (E.D. Va. 2007) ................................................................................. 3

*Smart Energy v. Hoover*,
No. 24-cv-2336, 2025 WL 1919953 (D. Md. July 1, 2025) ...................................... 10

*Sofran v. LaBranche & Co., Inc.*,
220 F.R.D. 398 (S.D.N.Y. 2004) ................................................................................ 3

iii

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ................................................................................................ 3, 9

15 U.S.C. § 80b-2 .............................................................................................................. 5, 7

15 U.S.C. § 80b-3(a) ........................................................................................................... 5

Fla. Stat. § 112.665 ............................................................................................................. 1

Fla. Stat. § 185.23(1) .......................................................................................................... 1

Fla. Stat. § 119.01 ............................................................................................................... 1

Fla. Stat. § 286.011 ............................................................................................................. 1

## I.    **<u>PRELIMINARY STATEMENT</u>**

Of the two remaining movants, only the West Palm Beach Police Pension Fund ("WPB Police") has established that it is typical and adequate under Rule 23 and is therefore qualified to be appointed Lead Plaintiff.[1]  As a public pension fund, WPB Police is exactly the type of institutional investor expressly preferred by Congress when enacting the PSLRA.  Unlike Dujmovic, WPB Police is a state-regulated entity, operating under the Florida Sunshine Law with complete transparency.[2]  WPB's qualifications stand in marked contrast to those of the only competing movant, Dujmovic, a/k/a "Mr. Profit" a/k/a "Jan Dvic."

While Dujmovic's loss is larger than that of WPB Police, he cannot be appointed as Lead Plaintiff because he does not satisfy Rule 23's adequacy requirements.  Dujmovic's motion is beset by numerous fatal deficiencies.  Most concerning is the fact that Dujmovic—sheltered by the limited regulatory scrutiny present in Dubai's "International Free Zone Authority"—is flouting U.S. registration and licensing requirements by illegally acting in the role of an investment adviser.  Dujmovic operates a stock promotion site called "Profit Trade Room" that depicts happy investors spending minimal time generating massive returns using risky and atypical strategies like swing trading, day trading, and "sniper trading."[3]  Dujmovic's operations offer myriad ways for subscribers to achieve astronomical fortunes by joining his "Gold" plan or by further promoting

---

[1] Defined terms take their meanings from WPB Police's opening brief, ECF No. 24 ("Motion"), and opposition brief, ECF No. 34 ("Opp.").  Internal quotations and citations are omitted. All emphases added unless otherwise noted.

[2] *See* Fla. Stat. §§ 112.665, 185.23(1) (enumerating the oversight duties of the Florida Division of Retirement of the Department of Management Services over state municipal retirement plans); Fla. Stat. §§ 119.01, 286.011 (Florida "Sunshine Law" requiring public access to municipal records and meetings).

[3] *See* Opp., ECF No. 34 at 11-12.

1

his site.[4]  Despite ample opportunity to demonstrate his adequacy, Dujmovic has utterly failed to address the concerns raised by WPB Police and instead has doubled down on his self-professed status as an educator, claiming he operates an "educational service focused on financial literacy."[5]

Dujmovic characterizes his "market information and analysis" business as "educational" in a misguided attempt to fall within the "publishers" exemption and evade regulation under the Investment Advisers Act of 1940 (the "Advisers Act").  *See* ECF No. 33 at 14.  However, even a cursory examination of Dujmovic's online presence demonstrates the falsity of his claims, further undermining his adequacy to serve as a fiduciary and potentially exposing himself to significant criminal and civil consequences.

In addition to failing to abide by the Advisers Act, Dujmovic's inadequacy issues are compounded by the fact that his website fails to disclose his interest in the underlying stocks that he regularly touts and promotes—including Krispy Kreme common stock—thereby violating the same federal securities laws at issue in this case.  If appointed, Dujmovic's credibility issues—and the unique defenses he is subject to—would become the focus of this litigation, subjecting the Class to unnecessary risk, especially when there is an indisputably adequate alternative in WPB Police.  Regardless of whether U.S. regulatory authorities will choose to examine the legitimacy of Dujmovic's operations, defense counsel assuredly will.  Class certification would devolve into a mini-trial on adequacy and entail extensive, time-consuming, and costly discovery (a wasteful use of Class resources) of Profit Trade Room's clients and operations spanning multiple continents.  This is not the type of leadership contemplated under the PSLRA.  *See In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-2394, 2019 WL 6052399, at *5 (N.D. Ill. Nov. 15, 2019).

---

[4] *See id.*

[5] *See* ECF No. 33 at 14.

For the reasons set forth below, and in WPB Police's motion and opposition, Dujmovic has failed to satisfy his burden of making a prima facie showing of adequacy, and WPB Police should be appointed as Lead Plaintiff.[6]

## II.    ARGUMENT

Under the PSLRA, the "most adequate plaintiff" must satisfy the typicality and adequacy requirements of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  As such, it is **Dujmovic's burden** to establish his adequacy.  *See Boeing*, 2019 WL 6052399, at *5 (noting that "a movant must supply some information about its ability to perform the role of lead plaintiff diligently and effectively" to establish prima facie adequacy); *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 316-17 (E.D. Va. 2007) (discussing the adequacy "burden" of a proposed class representative).  While Dujmovic has failed to meet this burden on the face of his submissions, WPB Police has also provided rebuttal evidence that proves there is "genuine and serious doubt" concerning Dujmovic's "ability to perform the functions of lead plaintiff."  *In re Cavanaugh*, 306 F.3d 726, 733 (9th Cir. 2002); *see also Averza v. Super Micro Comput., Inc.*, No. 24-cv-6147, 2025 WL 1771455, at *2-3 (N.D. Cal. June 26, 2025) (comparing the "preponderance of the evidence" civil litigation standard and more "lenient standard" of "genuine and serious doubt," and adopting the latter as more appropriate in the contest of PSLRA lead plaintiff selection).[7]

---

[6] At a minimum, Dujmovic should be ordered to provide discovery regarding his business endeavors to assure the Class of his adequacy as Lead Plaintiff.  *See* ECF No. 35 (WPB Police's Motion for Discovery); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iv); *Averza v. Super Micro Comput., Inc.*, No. 24-cv-6147, 2024 WL 5112222, at *6 (N.D. Cal. Dec. 12, 2024) (granting limited discovery to determine adequacy of lead plaintiff movant).

[7] Dujmovic cites cases where no rebuttal evidence was presented, in obvious contrast with the case here where WPB Police has provided the Court with compelling evidence from the public record implicating Dujmovic's adequacy.  *See Kasilingam v. Tilray, Inc.*, No. 20-cv-3459, 2020 WL 4530357, *3 (S.D.N.Y. Aug. 6, 2020) (appointing movant where no competing movant offered proof of inadequacy); *Sofran v. LaBranche & Co., Inc.*, 220 F.R.D. 398, 404 (S.D.N.Y. 2004) (rejecting inadequacy argument where competing movant "provided no proof").

### A. Dujmovic Is Inadequate to Serve as Lead Plaintiff

#### 1. Dujmovic Violates Federal Securities Laws and Operates as an Unlicensed Financial Adviser

Dujmovic has failed to make a prima facie showing of adequacy to serve as Lead Plaintiff. After two rounds of briefing, Dujmovic continues to mislead the Court and the Class about his identity and business, evidenced by his obfuscation of details about his personal and professional background. Specifically, Dujmovic continues to misrepresent the true nature of the financial services he provides through Profit Trade Room—a for-profit stock promotion website that provides investment advice including personal consultations, for a subscription fee. As detailed in WPB Police's Opp., Dujmovic violates the same federal securities laws and SEC disclosure obligations as Defendants in this case, including through his promotion of ***Krispy Kreme common stock*** without disclosing his ownership interest in same. Opp., ECF No. 34 at 7, 13-15; *see Newman v. Eagle Building Techs.*, 209 F.R.D. 499, 505 (S.D. Fla. 2002) (disqualifying movant as inadequate "[d]ue to the seriousness" of violations of the federal securities laws by movant).

In his sworn declaration and opening brief, Dujmovic described Profit Trade Room as "an online business, selling educational subscription services." ECF No. 14-4 at 2-3; ECF No. 13 at 12. In his most recent brief, Dujmovic now admits that the "educational services" he provides involve "market information and analysis." ECF. No. 33 at 14. However, Dujmovic assures the Court that his "educational" services are "focused on financial literacy" and do not constitute "personalized financial advice." *Id*. But this most recent characterization of the services Dujmovic provides—including Profit Trade Room—is far from the truth. As detailed in WPB Police's Opp., ECF No. 34 at 14 & nn.26-27, and discussed further below, Dujmovic is acting as an investment adviser as defined in the Advisers Act. In doing so, Dujmovic is further violating federal law

4

because neither Dujmovic nor his related pseudonyms, aliases, or business interests appear to be registered with any relevant regulatory authority.

Congress enacted the Advisers Act to respond to the dangers of fraud and deception by individuals and entities, such as Dujmovic and Profit Trade Room, that provide investment advice. The Advisers Act defines an "investment adviser" as:

> [A]ny person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities. . . .

15 U.S.C. § 80b-2; *see also SEC v. Park*, 99 F. Supp. 2d 889, 893-96 (S.D.N.Y. 2000) (finding defendant was an investment adviser because he operated a subscription-based website providing investment advice); *SEC v. Terry's Tips, Inc.*, 409 F. Supp. 2d 526 (D. Vt. 2006) (finding "[d]efendants are investment advisers" because they "advise their subscribers individually"). The Advisers Act requires that persons and entities that provide investment advice for compensation must register with the SEC, unless otherwise exempted or excluded. *See* 15 U.S.C. § 80b-3(a). Not only has Dujmovic failed to register as an investment adviser, but he has also failed to abide by the disclosure requirements placed upon investment advisers. *See* Opp., ECF No. 34 at 14, n.26. Considering Dujmovic's misconduct as an unregistered investment adviser and failure to comply with his disclosure obligations, his appointment as Lead Plaintiff would needlessly impose a myriad of challenges on the Class at the class certification stage. *See* Opp., ECF No. 34 at 15.[8]

---

[8] Dujmovic's authorities, ECF No. 33 at 12, 15, finding insufficient proof to rebut the presumptive lead plaintiff, or denying discovery, do not contemplate the type of compelling evidence presented here. *See Grad v. Ironnet, Inc.*, No. 22-cv-449, 2022 WL 2789899, at *5-6 (E.D. Va. July 15, 2022) (considering typicality of options-holder movant); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 547-48 (N.D. Tex. 1997) (rejecting speculation that movant's interests would be divided as an institution); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 347–48 (S.D.N.Y. 2009) (denying

Dujmovic's insistence that he provides educational or "financial literacy" services is belied by Profit Trade Room, which shows that Dujmovic is an investment adviser offering short-term investment strategies to his subscriber base. *See* Opp., ECF No. 34 at 11-12. Indeed, much of the advice Dujmovic provides is one-on-one, such as direct replies to his subscribers via Facebook, X (formerly Twitter), and the website stocktwits.com.[9] Profit Trade Room subscribers who purchase "Gold" memberships for $744 per month can also join live chat rooms, where Dujmovic advises on "day trades and swing picks" and provides a "full trade plan ahead of time." *See* Opp., ECF No. 34 at 11. The website provides investors with "[d]irect access to experienced individuals anytime during the day" through "private 1-on-1 support" and "questions answered." *See id.*

Dujmovic creates an illusion of legitimacy by clearly indicating on his LinkedIn profile that he is a financial adviser, financial planner, as well as a host of other financial qualifications. *Id.* at 12 n.23. His LinkedIn profile cross-references Profit Trade Room and includes multiple testimonials, so that potential subscribers can vet his bona fides through this online presence. But the fact that Dujmovic provides individualized advice—coupled with his compensation and putting forth his status expressly as an investment adviser—renders his boilerplate disavowals of being an investment adviser meaningless. *See Park*, 99 F. Supp. 2d at 895 ("[O]n the website, [d]efendants answered individual questions posited by subscribers in [d]efendants' chat room."); *Terry's Tips, Inc.*, 409 F. Supp. 2d at 532 (denying motion to dismiss where the complaint alleged that

---

discovery related to movants' post-disclosure purchases and status as foreign entity); *Borenstein v. Finova Grp. Inc.*, No. 00-cv-619, 2000 WL 34524743, at *8 (D. Ariz. Aug. 30, 2000) (denying discovery into movants' financial interests regarding dispute over loss calculation).

[9] Complete and accurate copies of four direct replies from Mr. Profit to his subscribers on the Facebook profile for Profit Trade Room, one direct reply from Mr. Profit to his subscriber on the X (formerly Twitter) page for Profit Trade Room, and one direct reply from Mr. Profit to his subscriber on https://stocktwits.com/ProfitTradeRoom are attached as Exhibit A to the Declaration of William R. Terpening in Support of WPB Police's Reply Memorandum ("Terpening Decl.").

6

defendants "advise[d] their subscribers individually" regarding trading strategies).[10] For example, in *Park*, the SEC sufficiently alleged that the defendant was an investment adviser under the Advisers Act, where he conducted "two-way electronic dialogues" with subscribers about his "stock picks and other investment advice." 99 F. Supp. 2d at 895. The same is true here.

### 2. Dujmovic's Attempt to Invoke the Publishers Exclusion is Meritless

In Dujmovic's opposition, he claims to run an "educational service focused on financial literacy" and that "[t]hrough his company, he provides market information and analysis (but no personalized financial advice)." *See* ECF No. 33 at 10. As discussed above, the evidence proves otherwise. Dujmovic appears to seek shelter from his illicit activities as an investment adviser under the publishers exclusion, whereby Congress provided an exclusion from the definition of an investment adviser for "the publisher of any bona fide newspaper, news magazine or business or financial publication of general and regular circulation." 15 U.S.C.A. § 80b-2(a)(11)(D). The publishers exclusion does not apply to Dujmovic because he provides one-on-one advice and promotes securities, like Krispy Kreme common stock, without disclosing his ownership interest.

In *Lowe v. SEC*, the Supreme Court explained that a "bona fide" publication is one that is "published by those engaged solely in the publishing business and are not personal

---

[10] Dujmovic further argues that "[a] shareholder's professional occupation in the educational finance industry does not preclude him from serving as a lead plaintiff." ECF No. 33 at 14. It is not Dujmovic's purported occupation as a "financial literacy" teacher that precludes his appointment. Rather, Dujmovic's very real and ongoing engagement as an unlicensed investment adviser—and failure to disclose this to the Court—is disqualifying. Dujmovic cites *Shim v. DZS Inc.*, a case where his counsel represented a licensed and registered investment adviser who was appointed lead plaintiff, with the court finding that "previous bad acts" raised by an opposing movant were not disqualifying. No. 23-cv-549, 2025 WL 634811, at *6 (E.D. Tex. Feb. 26, 2025). But, unlike the *DZS* movant, Dujmovic is an **unlicensed** and **unregistered** investment adviser whose undisclosed **current** activities present a risk to the class. Opp., ECF No. 34 at 13-15. Equally unavailing is *Banurs v. Li Auto Inc.*, where the "lack of temporal connection" between a movant's prior unrelated work as a stock analyst and the facts of that action did not implicate his adequacy. No. 24-cv-3470, 2024 WL 5247763, at *7 (E.D.N.Y. Dec. 30, 2024).

7

communications masquerading in the clothing of newspapers, news magazines, or financial publications." 472 U.S. 181, 209 (1985). The Supreme Court held that the exclusion was applicable because there was no suggestion that the publications "were designed to tout any security in which petitioners had an interest," as well as there being "no indication" the publications were "timed to specific market activity" or "events having the ability to affect the securities industry." *Id*.

The publishers exclusion does not apply to Dujmovic's conduct on Profit Trade Room or through his various aliases/pseudonyms because: (1) Dujmovic provides individual, one-on-one consultations; and (2) Dujmovic promotes securities for which he has an undisclosed interest.

First, Dujmovic's Profit Trade Room offers individualized investment advice to subscribers, who are given "[d]irect access to experienced individuals anytime during the day" through "private 1-on-1 support or through chat room community." *See* Opp., ECF No. 34 at 11. This type of individualized communication is enough to render the publishers exclusion inapplicable. For example, in *Terry Tips*, the court found that if defendants "were engaged in the delivery of personalized advice" on trading strategies, the publishers exclusion would not be a safe harbor. *See* 409 F. Supp. 2d at 532; *see also Park*, 99 F. Supp. 2d at 891, 895 (finding SEC sufficiently alleged facts, including "two-way electronic dialogues" in which defendants gave investment advice, that "could demonstrate defendants do not fall within the publishers exclusion").

Second, Dujmovic's promotion of Krispy Kreme common stock, which he indisputably owned at the time he provided Krispy Kreme stock tips,[11] is not disinterested commentary. In

---

[11] *See* Opp., ECF No. 34 at 7 & n.7, 14 & n.25; *see also* ECF No. 36-7 at 2-3 (reflecting stock tips for Krispy Kreme common stock throughout the Class Period, including on March 26, 2024 (the first day of the Class Period), April 5, 2024, May 9, 2024, and August 8, 2024).

8

*Park*, defendants were alleged to have acted as "touts, by promoting stocks in which they either had an interest or for which they were being paid to recommend without revealing their interests." 99 F. Supp. 2d at 895. Here as in *Park*, Dujmovic's promotion of Krispy Kreme common stock—and countless others—on his various sites cannot be characterized as disinterested commentary. Thus, Dujmovic's individualized investment advice and self-interested promotion of Krispy Kreme stock preempt and eliminate his ability to claim the publishers exclusion.[12]

Honesty and credibility are highly relevant factors in assessing the adequacy of class representatives. *See Savino v. Comput. Credit, Inc.,* 164 F.3d 81, 87 (2d Cir. 1998). As such, courts have consistently held that investors should not be saddled with lead plaintiffs whose lack of candor or misconduct demonstrates that they are not fit to serve as fiduciaries for the class. Dujmovic's conduct goes to the core of this litigation: if he is indeed violating the securities laws (which the evidence thus far shows that he is), he cannot lead a securities fraud class action. *See Batter v. Hecla Mining Co.,* No. 19-cv-4883, 2020 WL 1444934, at *7 (S.D.N.Y. Mar. 25, 2020) (rejecting movant accused of violating securities rules in connection with a brokerage account forty years prior despite the fact that movant never admitted to the wrongdoing). The fact that Dujmovic has not yet been convicted of a crime or found civilly liable (that we know of) is of no

---

[12] At a minimum, the Court should order discovery from Dujmovic to address concerns regarding Dujmovic's business endeavors, assuring the Class that its claims will be handled by a responsible fiduciary. *See* ECF No. 5 (WPB Police's Motion for Discovery); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iv); *Super Micro Comput., Inc.*, 2024 WL 5112222 at *6 (granting limited discovery to determine adequacy of lead plaintiff movant). Dujmovic complains that his counsel was "first informed" about these issues on July 28, 2025, *see* ECF No. 33 at 6 n.1, 14, but WPB Police—like every other member of the Class—only learned of Dujmovic's existence when he filed a motion seeking appointment as lead plaintiff on July 15, 2025, and then only learned about his undisclosed identities and businesses through its counsel's investigation. Dujmovic signed his certification on July 1, 2025, giving him and his counsel more time to discuss issues and how to fully and properly disclose them in his initial submissions to the Court. *See* ECF No. 14 at 1. That still has not occurred, and the Court should not credit any belated attempt by Dujmovic to address this failure.

9

matter. Dujmovic is subject to unique defenses not shared by any other member of the Class. If there is at least a potential that a movant will be subject to unique defenses that could jeopardize certification of the Class, Dujmovic cannot be appointed. *See In re Flag Telecom Holdings Ltd. Sec. Litig.*, 574 F.3d. 29, 40 (2d Cir. 2009) (adequacy is not met if the class representative is subject to any unique defenses which threaten to become the focus of the litigation).[13]

### B. WPB Police Should Be Appointed Lead Plaintiff

As Dujmovic cannot satisfy the requirements of Rule 23, WPB Police is the only movant before this Court that possesses the largest financial interest, claims that are typical of the Class, and that can fairly and adequately represent the interests of the Class. ECF Nos. 24 at 10-12; 34 at 18-19. Indeed, WPB Police's qualifications are uncontested, as neither Dujmovic nor any other movant or member of the Class has disputed WPB Police's adequacy or typicality. Moreover, the fact that WPB Police is the prototypical institutional investor Congress envisioned when enacting the PSLRA provides further assurance that WPB Police will effectively oversee Lead Counsel's prosecution of the Action. ECF Nos. 24 at 12-14; 34 at 16-18.

Dujmovic speculates that WPB Police seeks "preferential treatment" as an institutional investor and to disqualify Dujmovic solely because he is a natural person. ECF No. 33 at 13-14. Not so. WPB Police's motion and opposition are not predicated on its status as an institutional investor, but that it is the only movant that meets all criteria for appointment under the PSLRA, unlike Dujmovic. *See Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 720 (S.D. Tex. 2021) (rejecting individual movant "subject to unique defenses that render him unfit to be appointed" and noting that appointing a pension funds "has the added benefit of furthering the

---

[13] It is not necessary for the sword of Damocles to fall before the Court may recognize the risk of real injury to the Class. *See*, *e.g.*, *Smart Energy v. Hoover*, No. 24-cv-2336, 2025 WL 1919953 (D. Md. July 1, 2025) (quoting *Chang v. U.S.*, 327 F.3d 911, 921 (9th Cir. 2003)).

10

PSLRA's clear preference for institutional investors to serve as lead plaintiff"); *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, No. 20-cv-2031, 2020 WL 2614703, at *3 (S.D.N.Y. May 22, 2020).[14]

## III.    CONCLUSION

For the reasons discussed above and in its prior motions, WPB Police respectfully requests that the Court appoint it as Lead Plaintiff and otherwise grant its motion.

Dated: August 5, 2025

Respectfully submitted,

**TERPENING LAW PLLC**

By: */s/ William R. Terpening*

William R. Terpening
NC Bar No. 36418
221 West 11th Street
Charlotte, NC 28202
Tel.: (980) 265-1700
terpening@terpeninglaw.com

*Local Counsel for Proposed Lead Plaintiff West Palm Beach Police Pension Fund, and Proposed Local Counsel for the Class*

**SAXENA WHITE P.A.**
Marco A. Dueñas (*pro hac vice* forthcoming)

---

[14] Dujmovic's authorities, ECF No. 33 at 13-14, all recognize the preference for institutional investors but are not relevant for any other point since they all involve institutional movants that presented zero or insufficient evidence challenging the first-place movant's adequacy. *See In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, No. 04–cv-0265, 2004 WL 1221353, at *3 (E.D. Pa. June 3, 2004) (finding institutional movant "ha[s] presented no further evidence to rebut the presumption" of movant with largest loss); *Reiger v. Altris Software, Inc.*, No. 98-cv-528, 1998 WL 1986953, at *5 (S.D. Cal. Sept. 14, 1998) (appointing movant with largest loss where institutional movant "presented no evidence in its motion to indicate that [first-place movant] might be subject to unique defenses that render [it] incapable of adequately representing the class"); *Francisco v. Abengoa, S.A.*, No. 15-cv-6279, 2016 WL 3004664, at *6 n.5 (S.D.N.Y. May 24, 2016) (same); *Rabin v. John Doe Market Makers*, 254 F. Supp.3d 754, 761 (E.D. Pa. 2015) (appointing individual movant where institutional movant failed to rebut the presumption); *In re Vonage Initial Pub. Offering Sec. Litig.*, No. 07-cv-177, 2007 WL 2683636, at *10-11 n.15 (D.N.J. Sept. 7, 2007) (appointing group where institutional movant presented no proof and was itself atypical).

11

10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 631-3611
mduenas@saxenawhite.com

*Counsel for Proposed Lead Plaintiff West Palm Beach Police Pension Fund, and Proposed Lead Counsel for the Class*

**KLAUSNER KAUFMAN JENSEN & LEVINSON**
Robert D. Klausner (*pro hac vice* forthcoming)
7080 NW 4th Street
Plantation, Florida 33317
Tel.: (954) 916-1202
Fax: (954) 916-1232
bob@robertdklausner.com

*Additional Counsel for Proposed Lead Plaintiff West Palm Beach Police Pension Fund*

12

**ARTIFICIAL INTELLIGENCE CERTIFICATION**

I HEREBY CERTIFY that (1) no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, and Bloomberg; and (2) every statement and every citation to an authority contained in this document has been checked by an attorney in this case and working at their direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ William R. Terpening*
William R. Terpening

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 5, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

/s/ William R. Terpening
William R. Terpening

14